E. K. Juden et al. v. Nami Nebham.

[60 South. 45]

1. Bankruptcy.  *Property of estate.   Failure to schedule.   Title.*

  Property belonging to the estate of a bankrupt, but not scheduled by the bankrupt, will nevertheless pass to the trustee and its title does not revest in the bankrupt by his discharge and if no trustee be appointed because assets are not shown, yet a trustee may and should be appointed upon the discovery of assets to whom the legal title to the property will pass on his appointment.

2. Bankruptcy.  *Suit of bankrupt.  .Judgment.   Unscheduled assets. New trial.*

  Where, after judgment had been rendered on a note against defendants, they discovered that, subsequent to the making of the note and prior to the bringing of the suit, plaintiff had been adjudged a bankrupt and had not scheduled the note among his assets and set up these facts in a motion for a new trial, the motion should have been sustained as the adjudication of plaintiff a bankrupt, devested him of title to the note and deprived him of the right of recovery thereon.

Appeal from the circuit court of Lauderdale county.
Hon. Jno. L. Buckley, Judge.

Suit by Nami Nebham against Elias Kouri Juden and others.  Judgment for plaintiff.  From an order denying defendants motion for a new trial, they appeal.

The appellee was plaintiff in the court below and appellants were defendants.  The suit was brought on a promissory note dated January 27, 1905, and resulted in a judgment for plaintiff.  After judgment had been rendered, defendants filed a motion for a new trial, one of the grounds of which was that they had newly discovered evidence to offer, which would act as a bar to the recovery by plaintiff, and which was that subsequent to the date of the note and prior to the filing of this suit plaintiff had been adjudicated a bankrupt, and had not scheduled this note as an asset; that the

adjudication of plaintiff as a bankrupt divested him of title to this note, and consequently deprived him of his right of recovery. It was shown that no trustee in bankruptcy was appointed, as plaintiff claimed to have no assets, and it is the contention of appellee that the title to the note remained in appellee until a trustee is appointed.

*Neville & Stone*, for appellants.

The affidavits of the appellants and of the attorneys for the appellants, filed with the motion for a continuance of the motion for a new trial, and also in connection with the motion for a new trial, show that the appellee, during the year 1909, filed a voluntary petition in bankruptcy, in Baton Rouge, La.; that he swore in the schedules filed by him that he did not own any assets, and because of this fact no trustee was elected. We submit that the affidavits filed show that due diligence was used, and show that this information was not received until after the trial of the case, and also show that the proper witnesses to prove the facts set out in said affidavits could not reach Meridian where the court was held, before the adjournment of the term at which this case was tried.

We, of course, understand that this court has held, in the case of *Moore* v. *Railroad Co.*, 59 Miss. 243 that "a new trial will not be granted on the ground of newly discovered testimony, the only effect of which would be to impeach the creditability of a witness."

We also understand that this court laid down the rule, in the case of the *Railway Co.* v. *Crayton*, 69 Miss. 152, that "it is only in rare and exceptional cases that a new trial will be granted upon newly discovered evidence that is merely cumulative, and that a new trial should not be granted on account of newly discovered evidence, unless such evidence, in the opinion of the court, would remove all doubt and lead to a different result."

Now we submit that the production, at another trial of the case, of a sworn statement of appellee that in the year 1909 he. did not own any notes, would bring about a different result than was reached on the trial of this case.

We earnestly submit that the testimony of the appellee and his witness, touching the payment by appellee, to these ignorant Syrians, of seven hundred and seventy-five dollars, while they were in jail in New Orleans, is unreasonable, and almost unbelievable. Appellee and his witnesses testified that the money was put on the table in the jail, and that these ignorant Syrians picked the money up and counted it, and yet it was admitted by all the parties, that at that time these appellants could not count American paper money. Then take, also, in connection with these facts, that this appellee did not bring this suit within a short time before the expiration of six years from the maturity of the note.

Not only did the appellants desire to obtain the testimony with reference to the bankruptcy proceedings for the purpose of impeaching the testimony of appellee and his witnesses who testified as to the execution of the note, but also for the purpose of showing that at the time the suit was brought appellee did not have any title to said note. We understand that the attorneys for appellee contend that the title remains in the bankrupt until a trustee is appointed. We contend that the law is that the adjudication in bankruptcy divests the owner of property of the title, and that upon adjudication all property is in *custodia legis*, and that on the appointment of a trustee his title relates back to the date of the adjudication.

We think that the opinion rendered *In Re Frazi* v. *Oppenheimer*, 174 Red. 715, states the true rule in the following language:

"I think that the correct view of this matter is that the condition of the bankrupt's property after the adju-

dication and before the appointment of a trustee is anal-
agous to the condition of the personal property of the
decedent before the appointment of an ·executor or
administrator.    Bankruptcy, like death, divests the own-
er of the title; it becomes thereupon *in custodia legis.*"

· *S. A. Witherspoon, Jr.*, for appellees.

The last error assigned by appellants is that the court
erred in refusing to sustain the motion for a new trial,
and also erred in overruling the motion for a new trial
on the ground of newly discovered evidence.    The newly
discovered evidence set up in the motion for a new trial
was that the appellee, during the year 1909, filed a volun-
tary petition for bankruptcy in Baton Rouge, La., and
that in filing his schedule of assets he failed to enumerate
the note on which this suit is brought.    The purpose of
the evidence set up in the motion was twofold.    First
to impeach the testimony of the appellee by showing
that while he claimed in this suit to hold a note for seven
hundred and seventy-five dollars against appellant that
yet in 1909 he failed to schedule this note as an asset.
The second object of this testimony was in support of
the contention that as soon as bankruptcy proceedings
were filed that the title to the note was divested out of
the plaintiff and therefore at the time of the trial he had
no title to the note sued on.    We submit that the newly
discovered evidence was no ground for a new trial under
either of these contentions for the purpose of impeaching
the appellee the newly discovered evidence could be
no ground for a new trial under many rulings of this
court.    A new trial is never granted on account of the
discovery of new evidence which would merely tend to
impeach the statement of any witness.    *Moore* v. *Rail-
road*, 59 Miss. 243; *Railroad* v. *Crayton*, 69 Miss. 152.

As to the idea that the bankruptcy proceedings divested
the plaintiff Nebham of his title to the note sued on,
we submit that it had no such result for the reason that
it was shown that no trustee was ever appointed in the

bankruptcy proceedings and it is not until a trustee is appointed that the personal property of the bankrupt is divested out of him into the trustee. The affidavit produced by appellee, and which is in the record at pages 202 and 203, shows that no trustee was ever appointed in the appellee's bankruptcy proceedings, therefore the title was never divested out of Nebham into the trustee and any testimony with reference to the bankruptcy proceedings would have availed the appellants nothing except as a means of impeaching the testimony of appellee for which purpose newly discovered evidence affords no right to a new trial.

REED, J., delivered the opinion of the court.

After the trial of this case, ending in a verdict for appellee, and after the filing of a motion for a new trial by appellants, another motion was filed by them for the court to continue the motion for a new trial for the reasons set out in affidavits annexed.

It is shown by the affidavits that appellants after the ending of the trial of the case had received information that appellee had been adjudicated a bankrupt in the District Court of the United States sitting at Baton Rouge, La., on July 6, 1909; that appellants and their attorneys had used due diligence before the trial of the case in an effort to discover all material evidence relevant to their defense. And it is shown by the affidavits filed in connection with the motion that appellee had not scheduled the notes sued on in the bankruptcy proceedings; that, in fact, there were no assets in the bankrupt estate, no trustee appointed; and that no composition was made with creditors.

It is stated in 1 Remington on Bankruptcy, par. 996, that "property belonging to the estate, but not scheduled by the bankrupt, will nevertheless pass to the trustee, and its title does not revest in the bankrupt." This rule is fully sustained in the case of *Rand* v. *Iowa Central*

*Ry. Co.*, 96 App. Div. 413, 89 N. Y. Supp. 212, wherein
it is stated: "Where, after plaintiff's alleged cause of
action against the defendant accrued, he filed his peti-
tion in bankruptcy, and prior to the commencement
of the action was adjudged a bankrupt and obtained
his discharge, and in the bankruptcy proceedings he did
not disclose the existence of the claim upon which the
action was founded, or any other asset, in consequence
of which no trustee in bankruptcy was appointed, the
complaint is properly dismissed, upon the ground that
the plaintiff is not the real party in interest; the bank-
ruptcy proceedings having divested him of the right to
maintain the action." LAUGHLIN, J., in his opinion
in the case just cited, says: "I think it is the fair intent
and true construction of the Bankruptcy Act and rules
that, if no trustee be appointed because assets are not
shown, yet that a trustee may and should be appointed
upon the discovery of assets. It may be that the legal
title to this chose in action remained in the bankrupt,
but it is clear, I think, that he holds it as a trustee, and
that the equitable title passed to the creditors and the
custody and control passed to the court for their benefit,
to be administered through a trustee to whom the legal
title will pass upon his appointment, and that, therefore,
the plaintiff is not the real party in interest and cannot
maintain this action."

In *Saunders* v. *Mitchell*, 61 Miss. 321, this court,
speaking through COOPER, J., in discussing this subject,
said: "In this case it is shown that the property sued
for was not put on the schedule by the bankrupt. The
estate actually surrendered was insufficient to pay the
costs of the bankrupt proceedings, and there is nothing
shown from which it may be inferred that either the
assignee or the creditors had any notice of the bank-
rupt's right to the land. The bankrupt was by law
charged with the duty of making a full disclosure and
surrender of all the property owned by him. This he

failed to do. Proof of debts by the creditors would have availed them nothing, if the whole estate had consisted of the property returned by the bankrupt, and their failure to prove their claims under such circumstances cannot be said to be a surrender of their debts. They were warranted in assuming that there was no other estate than that described in the schedules, and neither the bankrupt or his heirs ought under these circumstances to be permitted to say that the creditors or the assignee abandoned the property to him or them."

If it is true that the appellee has been adjudicated a bankrupt, then all property owned by him at the time of the adjudication, except his exemptions, belongs to the bankrupt estate, and should be administered through a trustee for the benefit of the creditors of the bankrupt. Unless the appellee, if he was adjudicated a bankrupt obtained some title to the note in this case sued on through the bankruptcy proceedings, say, through sale by a trustee and purchase by a person who afterwards transferred the note to appellee, then he has no title to or ownership of the note, and in such case has no right to recover from appellants in the case. He is given no right or title to the note by reason of the failure to disclose its existence when he filed his petition and schedule in bankruptcy, and by reason of the failure to appoint a trustee because there were no assets to be received and disposed of. If there is any value to his claim against appellants, such value should be for the benefit of his creditors. If appellants owed appellee any amount when he filed his petition in bankruptcy, then it was appellee's duty to report and schedule that amount and surrender any benefit therefrom as a part of his estate. He cannot take advantage of any failure to do this.

The fact of appellee having been adjudicated a bankrupt and the surrender of his estate in bankruptcy

is a defense, and when set up in the trial of the case, and shown in connection with his failure to schedule the indebtedness which he claims the appellants owed him and is the subject of this suit, should be a defense which will finally and conclusively dispose of the litigation. This may be classed an exceptional case to the rule relative to the court granting a new trial. *Railway Co.* v. *Crayton,* 69 Miss. 159, 12 South. 271. The showing made by appellants was sufficient to entitle them to a new trial.

It is proper to state that the record in this case does not set forth with sufficient clearness and fullness the testimony relating to the contents of certain letters claimed to have been written to appellee by appellants renewing their promise to pay the note sued on, and the signatures thereto.

*Reversed and remanded.*