## Jones *et al. v.* Barnes.

### [66 South. 212.]

1. BANKRUPTCY. *Property of bankrupt. Failure to schedule. Discharge. Effect. Effect of pending actions. Dismissal of appeal. Corporation. Sale of stock. Fraud. Vacation. Ratification.*

    Property belonging to the estate of a bankrupt, though not scheduled, will pass to the trustee upon adjudication of bankruptcy, and does not revest in the bankrupt by his discharge.

2. BANKRUPTCY. *Effect of pending actions. Dismissal of appeal.*

    Where after the rendition of a final decree in the lower court enjoining defendants from instituting or prosecuting sales on certain promissory notes, the case was appealed to the supreme court, and pending such appeal, one of the appellants was adjudicated a bankrupt and was discharged, he thereby ceased to have any interest in the notes, though they were not scheduled, and hence the appeal as to him should be dismissed.

3. CORPORATIONS. *Sale of stock. Fraud. Vacation. Surrender of consideration. Ratification.*

    Where complainant was induced by false representation as to its financial situation to purchase the stock of a company and before finding out the falsity of such representations sold the stock to another, he did not thereby ratify the sale to him so as to prevent him from maintaining a suit to set it aside, and to cancel his notes given to secure a part of the price.

4. CORPORATIONS. *Sale of stock. Rescission. Suit. Return of consideration.*

    Where complainant was induced by fraudulent representations to purchase the stock of a corporation, and sold the stock to a third party, receiving from him notes for the purchase price, which notes afterwards turned out to be worthless, such third party having become a bankrupt as did also the corporation, complainant on suing to set aside the transaction for fraud, was not required to return anything to defendants as there was in such case nothing to be returned.

APPEAL from the chancery court of Marion county. Hon. R. E. SHEEHY, Chancellor.

Suit by H. A. Barnes against S. A. & B. C. Jones. From a decree for complainant, defendants appeal.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson,* for appellants.

The admitted facts in this case, we submit, entitled the defendants to a decree in their favor and require the reversal of the decree rendered against them by the court below.　These facts are: Barnes, the complainant, after purchasing the stock from defendant, operated the business for one month and then sold out his interest therein for more than he paid for it; this he did after being fully advised of the company's financial condition.　He did not repudiate his trade, purchased from defendants, as soon as he learned all the facts, but ratified it by selling to Oliver, and thus put it out of his power to return what he had purchased.　He does not and never has offered to surrender Oliver's note for five hundred dollars, given for the excess of his selling price over the price for which he purchased, and the same, unless complainant by his own negligence has allowed it to become barred, is yet a claim due him from Oliver's estate being administered in the court of bankruptcy; he has never given defendants a right to propound said claim.

In the cases of *Ware* v. *Houghton, supra,* and of *Jagers* v. *Griffin,* 43 Miss. 134, it is said by our own appellate court, speaking of the general rule, presently to be mentioned, that a rescission of a contract must be sought, if at all, in a reasonable time.

To entitle a party to rescind a contract on the ground of fraud or false representations by the other party, he must do so immediately upon discovering the fraud or false representations, and if he fails to do so, but goes on with the contract after such discovery, he thereby waives his right to rescind, and cannot be relieved from his contract.　See Mr. Freeman's note, 35 Am. Dec., 600, and the authorities cited.

107 Miss. 51

Everybody understands that a defrauded party is permitted to rescind a contract only upon the idea that his consent to the contract was never given to the bargain as made; or rather that his consent was obtained thereto by fraud, and that fraud vitiates the consent, and therefore there was no consent.

The contract, the sale of stock by defendant Jones to complainant Barnes, even if it were procured by defendant's fraud, was not void; it was merely voidable. If it were procured by fraud, Barnes could have affirmed the contract on the one hand, or he could on the other hand have rescinded it or sued for its rescission. If he once elected, that was the end of the matter.

He could not both rescind and affirm. In this case after discovering the true condition of affairs, after discovering the fraud, if the sale were fraudulent, he sold what he had bought, at a profit, and turned over to the other the entire affairs of the company; deprived himself of all power over the property and affairs of the company, and has made no effort to restore defendants to the *statu quo* before the sale, and withholds the profit he made by his own of that which he purchased from defendants and has so conducted himself as to deprive not only himself but the chancery court, whose aid he invokes, of all power to restore to defendants the property which he purchased from them, or to compensate them for its loss. If a fraudulent sale, conceding for sake of argument it was fraudulent, was ever affimed, Barnes we submit, affirmed his purchase from defendants. We ask that the decree appealed from be reversed, the injunction dissolved, complainant denied all relief, and the cause remanded solely for the allowance of damages on the injunction bond.

*Whitfield & Whitfield,* for appellee.

The most important consideration to which we address especially the attention of the court, is the fact shown

by the evidence, overwhelmingly, that Barnes never knew, until after suit was brought upon these notes, that the corporation was insolvent; that the statement furnished to him was a tissue of falsehoods, and that all the representations made by Jones, to him which induced the purchase, were, every single one of them, absolutely false. There was nothing for him to offer to return. His notes were absolutely worthless, not worth the paper they were written on, for the reason that the consideration, the mill property, was absolutely worthless. He had received nothing, and there was nothing to return.

It is really amusing to notice the two cases which learned counsel cited in their stress. Those cases are, *Ware* v. *Houghton,* 41 Miss. 370, and *Jagers* v. *Griffin,* 43 Miss. 143, and they are cited for the single purpose of showing that one who seeks a rescission of a contract, must do so within a reasonable time.

Now, what would the court suppose are the facts in those two cases? They are both cases of attempts to avoid notes for the purchase money of slaves made in 1859 and 1861, and to overthrow the judgment of the probate court ordering the sale. The history of that old probate court is certainly familiar to this court. The irregularities and voidness of its procedure is common knowledge. But specifically, let us say that in the case of *Ware* v. *Houghton,* the rescission was not sought until 1866, when the notes were dated December 16, 1859, seven years after, and in this case the court said: "But when parties have slept on their rights for over six years; when the statute of limitation would, itself, have made their title perfect; by cutting off all remedy from those supposed to possess the superior title, they present themselves in such attitude as to have no claim to the favorable consideration of a court of justice. The rule of diligence ought to be the more stringent where the means of information are of record in the county and where the title is deduced under the judgment or decree

of a court easy of access, and open at all times for examination."

In the case of *Jagers* v. *Griffin*, the notes were made in January, 1861, but the effort to rescind never occured until after April 19, 1866, over five years. Now, let us ask the court this question. What earthly application to the facts of this case, have these two cases, where the efforts to rescind were not made until five years or seven years after, and where the facts showing the voidness of the sales attacked, were "of record, in the county, of easy access, open to examinations of all"? In this case before the court, there was no record. The facts were not easy of access. They were not open to all, and the complainant never knew the utter falsehood of the statements, on the faith of which he bought, until after the appellant had the temerity to bring suit, on their fraudulently induced notes. The cases cited are utterly irrelevent. What is aid by the learned counsel in respect to Barnes ratifying the sale, by this sale to Oliver, is a mile from the mark. When Barnes made his sale to Oliver, the evidence clearly, and overwhelmingly shows that he had no knowledge whatever, that the representation in the statement, made to him, by Sanford Jones, through Featherston, were false. He had never heard of the seven thousand dollar debt to Hawkins. He did not know that the ten dollar stumpage claim was fictitious to the extent of fully three-fourths of its value. He did not know that the corporation was then utterly insolvent, owing five times the amount of debts at least, represented, nor many other most important facts.

One cannot ratify, without complete and full knowledge of all the facts affecting the matter which he is said to ratify. Citations to this effect will be useless. The able counsel representing the appellants are surely hard bested when they can say no more for their cause than appears in their very prefunctory brief. We do not say this by way of criticism. It was not possible for coun-

sel to write a brief in this cause which could be other-
wise than prefunctory, for this appeal is most manifestly
prosecuted solely for delay, and is absolutely without any
merit at all.   Barnes, it seems has gone to his reward
since this litigation was impetrated.

REED, J., delivered the opinion of the court.

### ON PLEA IN BAR.

A plea in bar as to appellant S. A. Jones was filed in
this case.   It is as follows:

"Now comes the appellee, H. A. Barnes, by his attor-
neys, and shows to the court that after the trial of this
cause in the lower court, to wit, on February 29, 1912,
the appellant S. A. Jones filed a petition in bankruptcy,
whereby he voluntarily, in accordance with the acts of
Congress in that behalf made and provided, assigned to
a trustee in bankruptcy all his property other than that
exempt from execution at law, and there was included in
said assignment, by operation of law, all the interest of
said bankrupt in each and every of the several notes sued
on in this cause, and on which the appellant, S. A. Jones,
is seeking a judgment against this appellee, and the said
S. A. Jones now has no interest in said notes, and has
not had any interest therein since the filing of said peti-
tion in bankruptcy, and the said S. A. Jones now has no
interest in this cause which will entitle him to prosecute
this appeal; and this the appellee is ready to verify.
Wherefore the appellee prays that this cause, as against
the said S. A. Jones, may be dismissed."

Appellant S. A. Jones filed a replication to the plea in
bar, in which he says that "all and singular the aver-
ments of said plea are untrue."

An agreed statement of facts is on file, and for our con-
sideration upon the hearing of the plea.   It reads:

"(1) After the rendition of the final decree appealed
from in this case, enjoining the appellants from institut-

ing or prosecuting suits on the promissory notes mentioned in the pleadings, the said S. A. Jones was adjudged a bankrupt by the United States District Court, Southern District of Mississippi, Southern Division, at Biloxi.

"(2) That the said S. A. Jones did not schedule the notes above mentioned, or either of them, as constituting a part of his assets, and in fact his schedule showed no assets above those which were exempt. At the same time the schedule of his debts showed that he owed two thousand, six hundred, twenty-six dollars and twenty-nine cents.

"(3) It appearing at the first meeting of the creditors that there were no assets, the estate was ordered closed. No trustee was appointed under the circumstances, as none appeared to be needed.

"(4) Afterwards, and before the prosecution of the appeal in this case, the said S. A. Jones was discharged as a bankrupt, and after receiving his discharge it was that he, together with his coappellant, prosecuted the appeal in this case."

As to the present hearing on the plea in bar, this case is controlled by the decision in the case of *Juden* v. *Nebham,* 103 Miss. 84, 60 So. 45. Therein it was decided that property belonging to the estate of a bankrupt, though not scheduled, will pass to the trustee upon adjudication of bankruptcy, and does not revest in the bankrupt by his discharge. The bankrupt in that case had not scheduled the note sued upon among his assets, and no trustee was appointed, because no assets were shown. He was finally discharged, and we held that he was divested of his ownership of the note, and consequently deprived of his right to recover. When appellant S. A. Jones was adjudged a bankrupt, all of his title and ownership in the notes involved in this action passed out of him, and was not revested in him upon his discharge. When his

ownership in the notes ended, his right to proceed in a case involving the notes was also at an end.

*The plea in bar is sustained.*

### ON THE MERITS.

We find in the record an agreement by counsel for the appellants and for the appellee that this case be submitted for hearing on two issues: (1) On the plea in bar to the appeal of S. A. Jones, one of the appellants; and (2) on the merits of the case. We have decided the first issue by sustaining the plea in bar.

Appellee filed his bill in chancery against appellants to restrain them from prosecuting two suits then pending in the circuit court, and from filing other suits on certain notes given them by appellee in payment for a part of the capital stock in a sawmill company, also for the purpose of rescinding the contract of sale of the stock, and for the purpose of having the notes declared void for the want of consideration and because their execution was induced by fraudulent representation. The bill, which contains, at length, averments showing the false and fraudulent representations which it is alleged were made by appellants in connection with the contract of sale, was fully denied by appellants in the answer which they filed, and which answer they made a cross-bill, praying judgment against the appellee for the entire sum of the notes given by him for the purchase price of the stock.

The case was tried by the chancellor, and submitted for his decision, upon issues of fact. The finding shown in the final decree is that the giving of the notes "was induced by misrepresentation, and that the property sold to the complainant was worthless." He denied the prayer of the cross-bill, and granted that the bill of complaint, perpetually enjoining appellants from prosecuting any further suits on the notes, directing the delivery of the notes by appellant for cancellation and return to appellee, and declaring the notes to be void. The decision

of the facts in this case by the chancellor favorable to the appellee is supported by the evidence and will not be disturbed.

Appellants contend that there was an affirmance of the contract of sale by appellee, because after purchasing the stock from appellants he operated the business for one month, when he sold his interest to R. C. Oliver, who was one of the organizers, with appellants, of the sawmill company, and held one-half of the capital stock therein. But there is ample evidence to show that appellee did not know, when he was operating the business, that the statement made to him of the financial condition of the company at the time of the sale of the interest in the capital stock was false, and that the representations then made by appellants were not true. The statement referred to was in writing, and is an exhibit in the record. This statement showed that the company had a clear capital stock of ten thousand dollars, which was not true. The company was then practically in failing condition. The statement did not show the correct financial situation of the company. For instance, there was no mention in the statement of a liability consisting of an indebtedness to G. L. Hawkins secured by a collateral pledge of the capital stock of the company amounting to seven thousand dollars. There were other representations made to appellee at the time, which were shown by the testimony to be false, and which he had no knowledge of until after his connection with the business had ended. Under the facts in this case, and in the absence of the knowledge of the false and fraudulent representations, it cannot be said that his connection with the mill for the short period of one month could be a ratification of the contract which would amount to an affirmance thereof by him.

We do not see that there was any unreasonable delay on the part of appellee in rescinding the contract of sale. It is shown in the record that he did not know of the real financial condition of the company until some time after

his deal with Oliver. In fact, he testifies that he did not know of the omission from the statement shown him of the large indebtedness to Hawkins until after he had disposed of his interest to Oliver and Oliver had closed the mill. The suits were brought by appellants shortly after he received this information from Oliver. Knowledge of other misrepresentations were not received by appellee until after he was sued by appellants. He did nothing to ratify the contract after he discovered the fraud practiced upon him. There was no delay, in view of the particular circumstances of this case, in rescinding, which is unreasonable, and which will amount to an affirmance.

Nor can it be said that there was a consideration in this case which should be returned by appellee as a condition precedent to the right to rescind. The evidence shows that, while he made a trade for his interest in the company with Oliver and received notes to evidence the amount due therefor, he did not collect anything thereon and that the notes were worthless; Oliver having failed and gone through bankruptcy. In truth, it is shown that the sawmill company and S. A. Jones, as well as Oliver, failed and were adjudged bankrupts. Appellee received nothing whatever of any value from his purchase of the stock at all. He did not receive the stock at all. There was nothing to be returned.

When we sustained the plea in bar as to appellant S. A. Jones, the appeal was thereby dismissed as to him. The case then remained on the docket for hearing as to the other appellant, B. C. Jones. The dismissal of the appeal of S. A. Jones did not carry with it the dismissal of the appeal of his coappellant, B. C. Jones.

We find no error in the trial of this case, and it is affirmed.

*Affirmed.*