### E. C. M. RAND v. RUSSELL SAGE.[1]

March 10, 1905.

Nos. 14,180—(190).

**Evidence.**

Plaintiff having testified that defendant owed him for services earned at a date prior to his adjudication as a bankrupt, it was proper to receive in evidence, as a part of the cross-examination, the schedules of property filed by him in bankruptcy proceedings for the purpose of testing plaintiff's credibility as a witness.

**Bankruptcy—Title to Property.**

Upon the adjudication of a bankrupt, title to his property passes from him at once, and is conditionally vested in the court, pending the appointment of a trustee, or until the estate is finally closed or abandoned by the creditors. It having been shown that plaintiff was adjudged a bankrupt, that the claim sued upon had not been scheduled by him in such proceedings, that no trustee in bankruptcy had been appointed by the creditors, and that the bankrupt had been discharged, but it not appearing whether the court had subsequently exercised jurisdiction over the estate, nor whether the estate had been duly closed or abandoned by the creditors, such facts did not, as a matter of law, operate to revest title in plaintiff.

**Request to Charge Jury.**

It was error to refuse to instruct the jury that plaintiff could not recover for that part of his claim earned prior to the date of adjudication in bankruptcy. It was not error to refuse entry of judgment for defendant notwithstanding the verdict.

Action in the district court for Ramsey county against defendant, as assignee in trust of Hastings & Dakota Railway Company, to recover

---

[1] Reported in 102 N. W. 864.

$15,000 for services rendered. The case was tried before Olin B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff for $7,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*Owen Morris* and *John D. O'Brien,* for appellant.

*Davis, Kellogg & Severance,* for respondent.

LEWIS, J.

Plaintiff seeks to recover in this action the reasonable value of services claimed to have been performed by him for defendant under and pursuant to a certain verbal agreement. The complaint alleged that defendant Russell Sage, of New York City, was the assignee in trust of the Hastings & Dakota Railway Company; and that by the terms of the instrument of trust certain lands belonging to the railway company were conveyed to him in trust, with authority and power to sell, handle, and manage the same, and to employ sufficient assistance to enable him so to do; that on or about September, 1897, plaintiff was engaged by defendant to take charge of and perform services in relation to these lands, which employment he accepted, and performed services from September, 1897, until September, 1902; that the amount of land involved was about two hundred thousand acres; and that his services included the charge of general litigation in connection therewith, and the listing, appraisement, and sale thereof, and the value of services so rendered was claimed to be $15,000.

The answer admitted transfer of the lands to defendant Sage, in trust, with power to sell and lease the same, and to reimburse himself in certain sums, and thereafter to divide the money among the stockholders of the Minnesota Railway Construction Company; that in January, 1895, at New York City, defendant, in his individual capacity, but not as trustee, employed plaintiff to perform duties concerning defendant's individual business at the stated compensation of $100 per month, which, about January 1, 1901, was increased to $200, and continued at that until September 1, 1902, when the arrangement was terminated, and alleged that plaintiff had been paid in full. Employment by defendant, as trustee, of plaintiff, was specifically denied, and it was alleged that whatever services plaintiff may have performed in relation

to the lands referred to were done for defendant personally, and covered by his salary.

For reply to this answer plaintiff admitted that he had been employed by defendant in an individual capacity, but that the services alleged in the complaint to have been rendered were additional ones, performed for defendant as trustee, under a separate and different agreement. The trial resulted in a verdict for plaintiff for $7,500.

1. Upon direct examination plaintiff testified that he first commenced to work for Sage in the city of New York, in 1895, under a verbal contract of $100 per month, which is stated by the witness as follows:

> The substance of the conversation was that I was to receive $100 a month for attending to his personal matters; that is, matters in which he was wholly interested. For matters that were known as outside matters, in which others were interested, I was to receive a fair compensation.

The witness testified that under this arrangement he went to work in 1895, and continued until September 1, 1902; that he had a conversation with Sage in September, 1898, as follows:

> Mr. Sage called my attention to what was known as the land matters (in the way of conversation) in Minnesota, and stated that he would like to have me go up there, and look after them, or look into them, and see what could be done—take any steps that were necessary for the benefit of those lands. And I stated to him, "This, Mr. Sage, will be an outside matter." He says, "Yes." And I said, "I receive special compensation for it, because other parties are interested in these lands with you."

The witness then stated, with more or less detail, the nature of the business transacted by him for defendant, and his testimony was that he was performing services for Sage in connection with other matters not of a personal nature, in which Sage was interested with other parties, and for which he was allowed extra compensation. With reference to his services in connection with the lands in question, the witness stated the number of trips he made to St. Paul, and the character of work done in the way of listing, advertising, and looking after litigation concerning the lands.

Defendant attacks the sufficiency of plaintiff's testimony with great vigor, and insists that it is overwhelmed by the array of evidence offered on the part of defendant to show that under the system arranged for the care and disposition of the lands plaintiff had no part; that special agents were employed at St. Paul, having entire charge of the advertising and sale of the lands, and that counsel was employed to look after the litigation; and whatever plaintiff did in connection therewith was of a purely incidental nature, and voluntarily performed for defendant under his personal contract with him. We have examined the record with the view of determining whether the evidence offered by defendant was of such convincing character as to justify the conclusion claimed for it, but are unable to meet the views of defendant in this respect. It is practically admitted by defendant that certain services were rendered by plaintiff in relation to the lands in question; that such services extend over a period of years, and had to do, more or less, with the examination of the lands as well as with litigation concerning them; and on the whole record we think it was a question of fact for the jury to determine wherein the right was.

2. Defendant insists that from the substance of the conversation which is claimed by plaintiff to constitute a contract, and which has already been recited, it conclusively appears that whatever contract was made was with defendant in his individual capacity, and not as trustee. This position is not well taken. It is admitted that Sage was in fact the trustee, and had in his personal charge the lands referred to, with authority to dispose of them and account for the proceeds. If defendant was authorized to execute the trust and incur the necessary expense for that purpose, he had authority to employ plaintiff to assist in accomplishing that purpose; and it follows that, if Sage entered into the arrangement with plaintiff to compensate him for services connected with the trust, the contractual relation thus established was between plaintiff and defendant as trustee, and not in his individual capacity.

3. It developed upon cross-examination of plaintiff that in the spring of 1899 he went into bankruptcy, and as a part of the cross-examination defendant offered in evidence the petition and schedules in bankruptcy, which were objected to upon the ground that they were immaterial under the pleadings. But they were clearly competent for the purpose of testing the credibility of the witness, and we need not decide whether

the objection was specific enough to raise the question that they were incompetent under the pleadings for the purpose of showing that plaintiff was not the proper person in interest as to that portion of the claim alleged to have been earned prior to the adjudication in bankruptcy. It was shown without objection that plaintiff was adjudged a bankrupt in the spring of 1899, and, such being the case, it was immaterial whether the schedules were properly received or not. As we view the case, it having appeared without objection that plaintiff was adjudicated a bankrupt, it follows as a matter of law that the title to the property in question passed from plaintiff for the benefit of his creditors. Conceding, then, that the creditors took no action at the first meeting towards the appointment of a trustee, and that no trustee ever was appointed, the question presented is whether title to the claim against Sage passed from plaintiff upon his adjudication as a bankrupt, and, if so, whether the title revested in plaintiff, in absence of proof that the estate was regularly closed, or that the property was not required by the creditors.

Section 55, Bank. Act July 1, 1898, c. 541 (30 St. 559 [U. S. Comp. St. 1901, 3442]) provides that the court shall cause the first meeting of creditors to be held not less than ten nor more than thirty days after the adjudication, and section 44 (30 St. 557 [U. S. Comp. St. 1901, 3438], that the creditors shall, at their first meeting after the adjudication, appoint a trustee or trustees for the estate, and, if none is appointed, then the court shall do so. Section 2 (30 St. 545 [U. S. Comp. St. 1901, 3420]) covers the question of jurisdiction of the courts in a bankruptcy proceeding; defines their powers, among which the appointment of receivers, or marshals, upon application of the parties in interest, in case of necessity for the preservation of estates; to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or a trustee is qualified; and to take such orders, issue such process, and enter such judgments in addition to those specifically provided as may be necessary for the enforcement of the provisions of the act. Section 70 (30 St. 565 [U. S. Comp. St. 1901, 3451]) provides that the trustee, upon his appointment and qualification, shall, by operation of law, be vested with the title of the bankrupt as of the date he was adjudged a bankrupt, except as to exempt property, in the various classes of property enumerated. In subdivision "d" it is provided that when a composition shall be set aside, or a discharge revoked, the trustee shall, upon his

appointment and qualification, be vested with title to all of the property of the bankrupt as of the date of the final decree setting aside the composition or revoking the discharge: subdivision "f," that upon the confirmation of a composition offered by a bankrupt the title to his property shall thereupon revest in him.

Considering all of these provisions, and giving each due force, the conclusion is unavoidable that it was the legislative intent to divest the petitioner of the title to his property upon being adjudged a bankrupt. While the full legal title and control of the property does not pass to the trustee until one is appointed and qualified, yet if the creditors do not, for any reason, act within the time limited, the power is expressly conferred upon the court to appoint such trustee, and, if necessary, in the meantime, to take possession of the property and exercise dominion and control over it for the benefit of the creditors through the medium of a receiver specially appointed, or the marshal of the court. These powers would not have been granted if it had been the intention to deprive the court of dominion over or jurisdiction of the estate pending the time a trustee might be appointed. Title remaining in the bankrupt is inconsistent with control of the estate by the court. There must be either one thing or the other. The bankrupt retains title to his property, with power to exercise dominion over it, to transfer and incumber it, or the title passes conditionally to the court for the benefit of the creditors until a trustee is appointed or the estate is closed. The latter is the only rational view consistent with the provisions of the act.

Conceding that title passed, and the property of the bankrupt remained suspended or vested in the court for the benefit of the creditors, another question arises under the facts of this case: In the absence of any evidence, is it to be inferred that the creditors have abandoned the estate, and, the court not having been called upon to exercise its jurisdiction, that title revested in plaintiff. We are not prepared to deny that the creditors may so act with relation to the estate of a bankrupt that they would be held to have abandoned all claim to his property, but are not of the opinion that the facts presented in this case justify such conclusion. All that appears is that no action was taken at the time, and as to what transpired thereafter the record is silent. It is conceded that the claim was not scheduled. Being a valid asset, it should have been scheduled, and the creditors put in possession of the facts concern-

ing it. The result of not having done so was probably to keep the creditors in the dark as to the existence of such a claim. Such being the case, the court will indulge in no presumption to the effect that the creditors thereafter exhausted their resources, and, having failed to recover any property, abandoned the whole matter. Upon proof of adjudication in bankruptcy, the presumption arose that plaintiff's whole estate was subjected to the dominion of the court for the benefit of his creditors. The burden then shifted to plaintiff to show either that his estate was closed in the regular manner, and that the claim in question came back to him, or he was required to prove that the creditors had, with knowledge of the facts, abandoned the whole proceeding, so that the title revested in him.

The discharge in bankruptcy did not affect the question of title to the property belonging to the bankrupt at the time of the adjudication. The administration of the estate may proceed without regard to the date of the discharge. Section 15 of the act, (30 St. 550 [U. S. Comp. St. 1901, 3428]), which provides for the revocation of a discharge upon certain conditions, has no bearing upon the title of property belonging to the estate, and which should have been scheduled.

In our opinion, it appears as a matter of law from the facts adduced in evidence that the entire estate of the bankrupt had been subjected to the jurisdiction of the court, and that the title thereto had not revested in the plaintiff. Upon this point we have had the benefit of a decision upon the same question in a similar case, rendered by the supreme court of New York, Appellate Division, in June, 1904—Rand (this plaintiff) v. Iowa, 89 N. Y. Supp. 212—and we agree with the conclusions reached by that court. The case of King v. Remington, 36 Minn. 15, 29 N. W. 352, has no application, the facts there involved being entirely different. While the language of the act of 1898 is somewhat different than that embraced in the acts of 1841 and 1867, yet the spirit of the law is the same, and the decisions rendered under those acts are in harmony with the result we have reached.

For the reasons stated, defendant was entitled to have submitted to the jury the request that plaintiff could in no event recover for services performed prior to March 3, 1899.

Order reversed and new trial granted.