(75 South. 147)

WATSON v. MOTLEY. (7 Div. 857.)

(Supreme Court of Alabama. April 12, 1917.)

1. BANKRUPTCY ⬅️438—MONEY COLLECTED FOR BANKRUPT AFTER DISCHARGE—LIABILITY OF ATTORNEY.

After a bankrupt has been discharged he may sue for and recover property not administered, and an attorney who prosecutes such suit and pays over to bankrupt money received in such litigated action is not, in the absence of fraud, liable for amount so paid on estate being reopened.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 626.]

2. BANKRUPTCY ⬅️438 — LIEN OF ATTORNEY.

Where after bankrupt had been discharged attorney recovered for him in a litigated suit a sum of money, attorney had a lien for his services, and could retain an admitted reasonable fee which in the absence of fraud could not be recovered on reopening of the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 626.]

3. ESTOPPEL ⬅️90(1)—ESTOPPEL BY ACTS—ATTORNEY AND CLIENT.

In such case bankrupt would be estopped by his own acts from claiming against the attorney.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 242, 243, 249, 251–255.]

Appeal from City Court of Gadsden; John H. Disque, Judge.

Assumpsit by L. C. Watson, as trustee, against George D. Motley. Judgment for defendant, and plaintiff appeals. Affirmed.

The pleas interposed were the statute of limitations of two years, and that the bankrupt estate of which plaintiff is the trustee was closed, and the trustees discharged on or about February, 1910, and that defendant was the attorney for F. P. Duncan, and that the money was received by him as such attorney after defendant had recovered same from said Duncan, under a contract by which defendant was to receive 50 per cent. of the amount recovered by said Duncan as his fee for professional services rendered in recovering the same, and defendant avers this was a reasonable fee, and that he retained 50 per cent. of said amount as his fee under said contract, and, without any demand or notice on the part of plaintiff or any one else not to do so, he paid the other 50 per cent. over to his client, the said Duncan, as he is bound to do. The other pleas set up the same state of facts in varying phraseology. The replication is that the cause of action stated was for money collected by said defendant as assets of the estate of Duncan & Co., F. P. and F. A. Duncan, who were formerly adjudicated bankrupts in the District Court of the United States for the Northern District of Alabama, and plaintiff is the trustee of said estate; that said defendant was the attorney for the said bankrupt in said bankruptcy proceeding, and had full notice of the fact that said moneys collected by him were the assets of this estate in bankruptcy. The agreed statement of facts in brief are: That on January 20, 1909, an involuntary petition in bankruptcy was filed against Duncan & Co., a partnership composed of F. P. and F. A. Duncan, and against each of them as individuals, and on February 11, 1909, the partnership and the individuals were duly adjudged bankrupts. L. L. Herzberg was elected trustee of the estate by the creditors, and qualified and gave bond, and as such trustee paid to the creditors the first and final dividend on their claim, and said estate was closed and the trustee discharged on November 11, 1911. That on January 22, 1915, the First National Bank of Gadsden, a creditor of said estate, filed its petition to open said bankrupt estate, alleging that certain assets owned by F. P. Duncan at the time of the bankruptcy, namely, an undivided interest in certain lands in Perry county, Ala., were not included in the bankruptcy schedule, and not administered in the bankruptcy proceeding, and on February 4, 1915, the district judge in and for said district reopened the bankruptcy proceeding for further administration of the estate, referring the same generally to C. H. Young, referee, and plaintiff, L. C. Watson, was elected trustee of said estate and duly qualified as such, and is now acting as trustee of said estate. On September 5, 1910, Duncan & Co. and the individuals were duly discharged in bankruptcy, and on September 20, 1910, F. P. Duncan brought suit to recover one-third interest in certain lands in Perry county, which he claimed to own by laws of descent, and that said suit finally resulted in the recovery by said Duncan of said lands

sued for, together with damages for detention therefor, the cause having been twice appealed to the Supreme Court of Alabama, and a final decision in favor of Duncan having been rendered on September 7, 1914. Neither the said land nor F. P. Duncan's interest therein was scheduled as assets of his estate in the schedule of assets and liabilities. That defendant George Motley was the attorney for the bankrupt, having filed their schedule of assets and liabilities, and was the attorney for said Duncan in the suit in the circuit court of Perry county, and in the Supreme Court of Alabama, and on January 26, 1913, said Motley collected the sum of $2,608.93 from the circuit clerk of Perry county, of which amount the sum of $2,158.16 was for damages for the detention of the land sued for, and the balance was interest and 10 per cent. damages allowed by the Supreme Court. Of this sum he paid to one Arthur W. Stewart the sum of $25 for professional services in said suit, and on January 27, 1915, he paid F. P. Duncan $1,291.96, and he retained the balance of the money, claiming the right to retain the same as a reasonable attorney's fee, and that said Motley has lived in Gadsden since the year 1908, and that articles about the Duncan suit were published in the daily papers on June 25, 1913, and that 50 per cent. of the value of the recovery was a reasonable attorney's fee.

Rutherford Lapsley, of Anniston, W. J. Boykin, of Gadsden, and Keith & Wilkinson, of Selma, for appellant. George D. Motley, of Gadsden, for appellee.

MAYFIELD, J. Appellant, as trustee in bankruptcy, sued appellee as an attorney of the bankrupt, seeking to recover money which the attorney collected as the proceeds of a judgment which the bankrupt had recovered as damages and costs in an action of ejectment. The only counts were one for money had and received, and another in trover for conversion of the funds.

The defendant interposed the general issue, and several special pleas setting up the facts under which the money was collected by the defendant and paid over to the bankrupt, except that retained by him as compensation for his services as attorney in procuring the judgment and collecting the proceeds.

Demurrers were interposed, but were overruled, to these special pleas or to most of them which are important on this hearing. The plaintiff then filed a special replication to the pleas, to which a demurrer was sustained. Thereupon trial was had by the court without a jury, on an agreed statement of facts, and judgment was rendered for the defendant. Plaintiff, as trustee in bankruptcy, prosecutes this appeal, here assigning errors to rulings on the demurrers as above indicated, and an exception to the judgment rendered.

We are of the opinion that the trial court ruled and found correctly, and we find no error which will authorize a reversal of the judgment for the defendant. Certain it is that the agreed statement of facts proves the special pleas (or some of them) without dispute, and, this being true, of course the defendant was entitled to a judgment thereon.

[1, 2] The burden however, was on the plaintiff to show a right to recover something, under one or the other of the counts, before defendant was required to defend. We find nothing in this record which would authorize a judgment against this defendant under either count, or under any other appropriate count. If the proof had showed a conspiracy or a fraud on the part of the bankrupt and his attorney to hinder, delay, or defraud the estate of the bankrupt, and that it was consummated, and that the attorney in consequence had received a part of the funds so diverted from the estate, the attorney might be held, as for the amount so received by him, under the count for money had and received; or, if the evidence had showed a conversion of funds belonging to the estate, and that defendant had participated in the conversion or was a party thereto, then a recovery might have been had on the count in trover. But no such facts were shown.

The reporter will set out the agreed statement of facts. That statement shows that a bankrupt, after being discharged, brought an action of ejectment to recover an interest which he claimed in lands situated in Perry county, Ala., and that the defendant, as his attorney, brought the action and recovered a judgment as for the lands or an interest therein, together with damages for the detention, and the cost of the lower court and of this court on appeal and the 10 per cent. damages allowed by the statute. This action was resisted and litigated. There was no claim that it was a mere friendly suit, or an attempt to defraud the creditors of the bankrupt or the estate of the bankrupt or the trustee in bankruptcy, there being none at that time. The damages recovered were solely as for a chose in action and sounding in tort, a tort on the part of those claiming the land recovered. Why the lands or the interest therein was not returned as assets of the bankrupt, or why a similar action was not brought by the trustee in bankruptcy before he was discharged, is not made to appear. It may be that the claim of the bankrupt as to the land was so doubtful that the assignee or trustee in bankruptcy did not desire to bring the action to recover the land or the damages, or it may be that it was the fault or even the fraud of the bankrupt or his attorney that an action was not so brought. Again, it may have been a mistake or an oversight of the bankrupt or of his attorney, or of both. But, whatever the cause may have been, this record does not disclose it.

In the absence of evidence, we should not presume fraud or wrong on the part of the

bankrupt, or of his attorney, or of the former trustee in bankruptcy.

After the bankrupt had recovered the land and collected the judgment as for damages, the proceedings in bankruptcy were, it seems, reopened. The land was recovered by the present trustee in bankruptcy, as the property of the bankrupt, and a judgment therefor was affirmed on appeal to this court. Duncan v. Watson, 73 South. 448.[1] That decision, however, is no authority for maintaining this action. That case was brought and maintained on the ground of a fraudulent conveyance of the land by the bankrupt to his wife and to his attorney. Here, as we have said, there is nothing to show fraud on the part of the bankrupt or his attorney. It appears without dispute that the attorney paid over to the bankrupt the money he collected on the judgment, except the part which the bankrupt owed him as for his fees and services in procuring the judgment and collecting the proceeds, as to which the statute gave him a lien—a lien which even the bankrupt court would protect, in the absence of fraud or unfair dealing—and it is admitted that the amount retained by the attorney was reasonable for the services performed. The attorney was employed by the bankrupt to recover the lands, and judgment was recovered. There was then no bankruptcy proceeding pending, nor trustee to bring the action or to employ the attorney. The bankrupt had been discharged, and it was adjudicated by the circuit court of Perry county (and on appeal affirmed by this court) that the plaintiff, the bankrupt himself, was entitled to recover the possession of the land and the damages. This was an adjudication that the money, when collected, was the property of Duncan. No other person at the time judgment was rendered or at the time the money was paid had made any claim thereto. There was therefore no other person to whom the clerk of the court could pay the money collected in satisfaction of the judgment. It was not then known that the bankruptcy proceeding would be reopened by the creditors of the bankrupt, as was subsequently done. The law therefore at the time the attorney paid over the money to Duncan, the plaintiff in judgment, would have compelled the attorney to pay it over, and would have compelled Duncan to pay the attorney for his services in procuring the judgment. So far from there having been done anything unlawful, the law would have compelled that which was done; and assuredly doing that which the law would or did compel will not give a right of action against the party who was, or would be, so compelled to act. Surely no duty rested upon the attorney to hold this money until it was ascertained whether or not the bankruptcy proceedings would be reopened, and whether or not, if so reopened, all or any part of it could be recovered from him by the trustee in bankruptcy, if one was

[1] 198 Ala. 180.

ever appointed. The case must be looked to in the light of the facts as they existed at the time the attorney collected the money and paid it over to his client, and not in the light of facts subsequently created by the creditors of the bankrupt, or by the trustee subsequently appointed. It appears without dispute that the attorney did not have a dollar of the bankrupt's money when this suit was brought, and that he did not owe him a cent. That is, it is not even claimed that the bankrupt, had the proceedings not been reopened, could have maintained any action against the attorney.

[3] If the attorney is not now, and never has been, liable to the bankrupt for one cent, how does it happen that he is, or may be, liable to the trustee? This could be so only where there is some fraud against the creditors of the bankrupt or against his estate or against the bankruptcy law; and the bankrupt would be estopped by his own acts from claiming against the attorney.

In this case, however, there was no attempt to allege or prove any fraud on the part of the attorney who brought the action and collected and paid over the money to the bankrupt. Counsel for appellant seem to have gone upon the theory that, if a bankrupt, even after he is discharged, ever brings an action to redress a wrong done him before he was adjudicated a bankrupt and discharged, the attorney who brings the action and collects the damages awarded in the judgment is liable to the creditors of the bankrupt, or to a subsequent trustee that may be appointed if the bankruptcy is reopened. We do not think this is, or ought to be, the law. A bankrupt is not barred or estopped from recovering his property by reason of the fact that he has been adjudicated a bankrupt and discharged. The adjudication of bankruptcy does not, as matter of law, destroy forever all his rights and remedies to all his property, but only to that part thereof which is administered. The bankrupt court or the assignee or trustee may decline to administer all that is returned, or some of it may never be returned; and as to this the bankrupt may recover after his discharge, and it will be his unless the bankruptcy should thereafter be reopened so as to include it. If the proceedings should be reopened, neither the party of whom the property was recovered, nor the attorney who brought the suit, would be liable as for money wrongfully paid to the bankrupt. In the absence of fraud on the part of the bankrupt, or on that of the attorney in bringing the suit in ejectment or in collecting and paying over the money awarded as damages, if the attorney would be liable for paying the money to the plaintiff to whom it was adjudicated, then the clerk of the court who paid it to the attorney would also be liable; yet the clerk could be mandamused and compelled to pay it over to the plaintiff, or be held liable as such clerk

for refusing so to do. In the same way the attorney to whom it was paid would be liable to his client if he failed or refused to pay it over on demand; yet the plaintiff in this case seeks to hold the attorney liable for doing what the law would have compelled him to do.

As we have said, there may be some liability on the part of this defendant as for the money here sought to be recovered of him; but, if so, it must be upon the theory of fraud upon his part in hindering, delaying, or defrauding the creditors, or the estate of the bankrupt. The instant case does not proceed upon this theory; and, if it did, there is no evidence to support the theory.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.