## TALIAFERRO et al. v. LYNN.

No. 30080. Nov. 20, 1941.

Supplemental Opinion March 3, 1942.

*123 P. 2d 243.*

Reuel W. Little and Jack H. Smith, both of Madill, for plaintiffs in error.

Newman & Phillips, of Durant, for defendant in error.

HURST, J. This is an action by plaintiff, G. E. Lynn, against the defendants to establish his equitable title, by virtue of a resulting trust, to a one-half interest in certain land in Marshall county, for an accounting for the rents and profits therefrom, and for the cancellation of certain conveyances of record. The trial court adjudged plaintiff to be the owner of a one-half interest in the land, and defendants appeal.

Several contentions are urged by defendants, but we think one question decisive: May a bankrupt, who owns both exempt and nonexempt property on the date of the institution of bankruptcy proceedings, and who schedules only his exempt property and intentionally fails to disclose to the bankruptcy court his nonexempt property, in an action of equitable cognizance instituted after the close of the bankruptcy proceedings, establish and enforce a trust in such unlisted property? The trial court held that he could. We think such holding is erroneous.

The material facts are these: Plaintiff and D. B. Taliaferro each owned a one-half interest in the land. On October 27, 1925, at the instance of Taliaferro, they conveyed the land to John Marshall. Marshall and Taliaferro were engaged in an oil venture, and Marshall paid no consideration for the deed. On November 2, 1927, D. B. Taliaferro died. Marshall held the title for Taliaferro, and had no knowledge that plaintiff had or claimed an interest therein. On September 6, 1929, Marshall, at the request of B. N. Taliaferro, a son of D. B. Taliaferro, and one of the executors of his will, conveyed the land to the First National Bank in Madill, which, on June 12, 1936, quitclaimed a one-half interest to the First National Bank of Madill. These deeds appear to have been made without consideration.

On June 4, 1931, plaintiff filed a voluntary petition in bankruptcy. Therein

he listed unsecured claims totaling $76,-833.35. As assets he listed his home, household furniture, two cows and five hogs, all of which he claimed as exempt property. All questions in the property schedule with reference to his ownership of nonexempt property, or interests therein, whether real or personal, were answered in the negative. The bankruptcy petition was verified by plaintiff. On June 4, 1931, he was adjudged bankrupt. On June 18, 1931, the first meeting of creditors was held and the bankrupt was examined, but no nonexempt assets were disclosed, and no trustee was appointed. On July 27, 1931, Lynn filed his application for discharge, was duly discharged, and the case was closed. At no time during the proceedings did he reveal the fact that he claimed an interest in the land in controversy. He explains that such failure was due to an oversight on his part, although he testified that after the death of D. B. Taliaferro in 1927 he had several conversations with G. W. Taliaferro, both before and after the institution of the bankruptcy proceedings, in which his interest in the land was discussed, and its division considered. We think the evidence clearly shows that the failure to list the property was intentional. So far as the record discloses, his creditors have never been paid. Lynn filed this action April 4, 1938, naming the two banks and the heirs of D. B. Taliaferro as defendants.

In First National Bank of Jacksboro v. Lasater, 196 U. S. 115, 25 S. Ct. 206, Lasater filed a petition in bankruptcy, and a trustee was appointed. Lasater disclosed no assets to the trustee, and in due time was discharged. Shortly after his discharge he brought action against the bank for usurious interest which he claimed he had paid prior to the filing of the petition in bankruptcy. The Supreme Court said:

"It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value (as certainly this claim was, according to the judgment below), it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts, and still assert title to the property."

Lynn contends, however, that such rule applies only where a trustee has been appointed, and that where, as here, no trustee is appointed, the title at all times remains in the bankrupt, citing 8 C.J.S. 1598-1599. We are not impressed with this contention. His nondisclosure of his ownership thereof was a fraud upon his creditors. The title to the property remained in him because of the failure to appoint a trustee. He should be, and is, precluded from taking advantage of his own omission by asserting such title. Rand v. Sage, 94 Minn. 344, 102 N. W. 864; Suetter v. A. E. Kern & Co., 146 Ore. 96, 29 P. 2d 534; Juden v. Nebham, 103 Miss. 84, 60 So. 45.

While in some states, notably New York, the courts have reached a contrary conclusion where no trustee has been appointed (111 A.L.R. 852), we prefer to follow the rule which denies to one who has refused to disclose his property, and has thus defrauded his creditors, the right thereafter to call upon the courts to establish or confirm his title to such property. The plaintiff does not come into court with clean hands, and he is entitled to no relief in this action. Since we hold that the failure to list the property was intentional, we need not determine whether the same rule would apply if it had been unintentional. For a collection of the authorities dealing with the question here involved, see annotation in 111 A.L.R. 835-856.

Reversed, with instructions to render judgment for defendants.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, and DAVISON, JJ., concur. WELCH, C. J., and ARNOLD, J., absent.

## Supplemental Opinion.

It having been brought to the attention of this court that after the submission of the case G. E. Lynn died in Marshall county, Oklahoma, said death occurring on the 22nd day of November, 1941. Under the rule announced by this court in Spencer v. Hamilton, 156 Okla. 194, 13 P. 2d 81, it is hereby directed that the opinion filed on the 20th day of January, 1942, be withdrawn and filed as of the 20th day of November, 1941.