PONDER, Justice.
 

 The defendant has appealed from a judgment awarding the plaintiffs, the heirs who were substituted on account of the death of the original plaintiff during the pendency of the suit in the lower court, the value of one-sixth interest in oil taken from their land and ordering the defendant to account for the value of such interest in oil taken from the land after August 31, 1948.
 

 
 *985
 
 The Caddo Lake Oil and Pipe Line Company transferred by deed one acre of land to Edmund K. Smith on November 4, 1904 in the form of a square in the Northeast Corner of the Southwest Quarter of the Southwest Quarter of Section 1, Township 20 North, Range 16 West. Thereafter this same company transferred by deed to James C. Kennedy on June. 1, 1927 the East two-thirds in a rectangular form of the Southwest Quarter of the Southwest Quarter of Section 1, Township 20 North, Range 16 West, containing 26% acres more or less, which for some unknown reason included the property previously conveyed to Smith. The Kennedy tract was transferred by deed to Southern Cities Distributing Company on March 29, 1928. The Southern Cities Distributing Company transferred it to the Arkansas Fuel Oil Company, the defendant herein, on December 31, 1928. Mrs. Mae Pauline Smith, the wife of Edmund Smith, granted an oil lease on the one acre of land to Paul H. Burton on April 20, 1948. This lease was assigned to the Nestor Oil Company on April 29, 1948. The Nestor Oil Company drilled two oil wells on the Smith tract of land which were brought in as producing wells during the month of June, 1948. The defendant company connected its pipe line to the wells and purchased the oil from the Nestor Oil Company, Mrs. Smith’s lessee, but refused to pay for the royalty interest in the oil. This suit was brought to recover the royalty interest provided for in the lease and for an accounting. The defendant opposed the suit on two grounds, viz: first, the defendant claimed to be owner of the property by prescriptive title; and second, that the Smith title to the property was divested from him by bankruptcy proceedings in 1927 and that it has never reinvested in him or his heirs. The plea of prescription was rejected by the lower court on the ground that the defendant had failed to show possession as owner, or possession sufficient to acquire title. The court was of the further opinion that sufficient title to the property remains in the Smith heirs for the purpose of this suit. The court gave judgment in favor of the plaintiffs and the defendant appealed.
 

 It appears from the testimony that the Southern Cities Distributing Company and the appellant are subsidiaries of the Arkansas Natural Gas Corporation, which is a subsidiary of the Cities Service Company and that both the Cities Service Company and the appellant have the same officers and general employees, particularly the tax agent and land agent.
 

 The Southern Cities Distributing Company obtained an opinion from a firm of attorneys as to the title of several tracts of land, including the property in controversy, prior to its acquisition of the Kennedy property. In this opinion the title to the Kennedy property is approved but the one acre tract is referred to in the opinion as being acquired by the present owner by deed recorded in Conveyance
 
 *987
 
 Book-page-, Conveyance Records of Caddo Parish. Notation is made in the opinion that the purchaser get a quit claim deed from the Caddo Lake Oil and Pipe Line Company and get a deed from Kennedy to this one acre tract of land. It appears from the opinion that it is based on abstracts of title and research of the records.
 

 The plaintiff takes the position that the defendant acquired the property in bad faith. The record shows that the only deed wherein this property is described as one acre of land or transferred as such is the Smith deed. It is significant that particular attention is called to this one acre tract of land and curative work is suggested. The book and page number of the Conveyance Record, wherein the one acre tract was supposed to have been transferred, is not stated. While the book and page number of the Conveyance Record in the Kennedy tract of land is stated. It is difficult to believe that the attorneys did not have knowledge of the Smith deed at the time the opinion was given because in no other instance was it segregated from other lands. The note in the opinion advising the purchaser to get a quit claim deed from the Caddo Lake Oil and Pipe Line Company and a deed from Kennedy is very significant and would have been unnecessary had the attorneys considered that the deed to the Kennedy tract was sufficient to give title to the Smith property. But be that as it may, wé are not resting our opinion on what might appear to be the legal bad faith of the defendant but prefer to rest it on the ground that the defendant and its author in title have never possessed the property as owners or otherwise.
 

 The defendant relies on the fact that it drilled a well on the Kennedy property which it contends constitutes possession to the extent of their title. The defendant further relies on the fact that the land was partially fenced for pasturage under' a lease from it and the fact that the defendant owned a pipe line extending across a portion of the one acre tract. The evidence shows that the Smith tract of land is located among scattered oil wells and that fuel lines run indiscriminately between these wells across the property of others, without objection. The lower court pointed out that this is frequently done without obtaining permission from the owners. In so far as the purported lease for pasturage is concerned, it appears that it is merely an acknowledgment of tenancy and covers the entire Kennedy- tract. The tenant acknowledged that he is a tenant at will and would not claim ownership to the property. The tenant agreed to pay $5 a year as long as he occupied the property. However, this instrument was not signed by the defendant. Moreover, Hanner, the purported tenant, partially fenced in 2,009 acres of land into one pasture, including the one acre tract. The fence was not a complete inclosure because two sides of it ran into Caddo Lake and it included the prop
 
 *989
 
 erty of several other persons from who Hanner had no lease. Not only Hanner, hut other people grazed cattle in this pasture.
 

 In 1907 an oil well was drilled on the one acre of land in controversy which was abandoned as a dry hole but the casing remained standing above the ground until 1940. This well was known as E. K. Smith No. 3 and the records in evidence show that it was drilled on the E. K. Smith farm.
 

 The defendant has consistently made sworn tax returns to the Assessor of Caddo Parish of a correct and complete list of all property which it owns or has in control since the Kennedy property was acquired, in which it is stated that they own the Kennedy tract of land, less one acre in a square out of the northeast corner. In 1939 the defendant granted a right-of-way by deed to the Highway Commission in which it is stated that this one acre tract of land is owned by the E. K. Smith estate. This deed was signed by the vice-president of the defendant company.
 

 The Nestor Oil Company, the lessee of the plaintiff, is a partnership composed of Nestor and his wife. Nestor is an employee of the Arkansas and Louisiana Gas Company whose principal officers are the same as those of the appellant. He has been in their employ for a number of years as supervisor of compressor plants. He testified that he had a discussion with the head of the land department of the defendant about the property at the time he was seeking a permit from the Conservation Department to drill the wells under his lease from Mrs. Smith and that when the official told him, “I see you are going to drill a well on our property,” he informed this official that the property was owned by E. K. Smith. He testified that the official later told him that he was right and that he had found a map showing the property belonged to E. K. Smith. No attempt was made to prevent the drilling of these wells under the Smith lease although the defendant company had knowledge that they were being drilled under the Smith lease. The defendant connected its pipe line to the wells and purchased the oil from the plaintiff’s lessee. It paid the lessee for the amount of oil taken from the land due under the terms of the lease, but refused to pay the royalty interest.
 

 From our appreciation of the evidence, Smith took actual corporeal possession of the property shortly after he acquired it and this possession continued by civil possession until the date of this suit. The external signs of the oil well drilled thereon in 1907 remained until the year
 
 1940.
 
 Mrs. Smith granted a right-of-way over the property to the Highway Commission in 1939 and Smith and his successors in title have paid taxes on the property since Smith acquired it. These incidents show that the corporeal possession was continued by the civil possession of Smith and his successors in title. The oil well on the Kennedy tract of land, some
 
 *991
 
 distance from the land in controversy, was drilled sometime around the year 1924. The defendant takes the position that by this possession of a portion of the property it is to be presumed that the possession is to the extent of the defendant’s title. At that time Smith was in possession of the property in controversy. The property could not be possessed by both parties at the same time. The person holding possession under title maintains it as against later alleged constructive possession of the same property by another person. Gilmore v. Schenck, 115 La. 386, 39 So. 40. The rule that possession of a part of a tract of land under color of title is the possession of the whole cannot prevail over the adverse possession of the other party under a better title. Chicago, St. L. & N. O. Ry. Co. v. Town of Amite City, 136 La. 742, 67 So. 814. Moreover, the record does not show that the defendant and its author in title ever intended to possess the Smith tract of land either as owner or otherwise. In fact, they have recognized the ownership of Smith and his successors in title and have never endeavored to dispossess them- or prevent them from exercising acts of ownership.
 

 We are not impressed with the defendant’s contention that Smith lost title to the property through bankruptcy proceedings. It was brought out on the trial of this case that Smith was adjudged a bankrupt in 1927 and that a trustee was appointed,. Smith did not list this property in the bankruptcy proceedings and the property was never administered by the trustee. The trustee was discharged and the proceedings closed on September 28, 1928. The trustee is not now in existence' and it would appear that the only persons who would have a right to attack the title of Smith would be his creditors. But be that as it may, the title cannot remain suspended in the air and must vest in someone. It would appear to us that sufficient title remained in Smith and his heirs to preserve the property, if not for their use at least for the use of Smith’s creditors. Authorities have been cited to that effect, but is it unnecessary for us to pass on this question because no creditor is asserting any claim herein. The defendant cannot resist payment of the royalty interest on the ground that other persons might have title to the property. A vendee who goes into possession cannot dispute the title of his vendor as long as he remains in possession of the property. It is sufficient to say that the defendant does not own the property in controversy and it has no right ' to champion the cause of others not parties to the suit.
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.