634 P.2d 1286

Gilbert v. SANTISTEVAN,
Plaintiff-Appellant,

v.

CENTINEL BANK OF TAOS, Eliu E.
Romero and Bert Quintana,
Defendants-Appellees,

and

CIT Financial Services Corporation, Rio
Costilla Cooperative Livestock Association, State of New Mexico, and Gloria V.
Santistevan Vigil, Defendants.

No. 4413.

Court of Appeals of New Mexico.

Nov. 6, 1980.

Robert Dale Morrison, Taos, for plaintiff-appellant.

John F. McCarthy, Jr., White, Koch, Kelly & McCarthy, Santa Fe, Eliu E. Romero,

Taos, pro se, Lynn Pickard, Pickard & Singleton, Santa Fe, for defendants-appellees.

## OPINION

LOPEZ, Judge.

The district court dismissed plaintiff's suit for damages for fraud on the grounds that he was not the real party in interest in that he did not own the property of which he claimed defendants Centinel Bank of Taos (hereafter referred to as Bank), Quintana, and Romero had fraudulently deprived him. We affirm the dismissal.

While Santistevan asserts the dismissal was improper on various procedural and substantive grounds, the major issue he raises is whether a bankrupt who fraudulently conceals an asset from his creditors and from the trustee in bankruptcy may later, after his discharge in bankruptcy, maintain a cause of action against third parties concerning this property. A brief review of the pertinent facts is helpful.

Santistevan filed a petition in bankruptcy in the United States District Court in New Mexico on September 9, 1970. He originally listed the land in question, 75 acres in Costilla, New Mexico, as an asset which he valued at $2,475.00. Later he amended his petition to exclude the land, stating that he had deeded it to his brother, Abe Santistevan, eight months earlier. The court-appointed trustee in bankruptcy found that there were no assets over the exemptions claimed; consequently, no money was paid out of the estate. On November 24, 1970, the Court ordered Santistevan discharged in bankruptcy.

The instant case concerns the validity of a deed to the property in Costilla, purportedly signed by Santistevan, conveying the land to the Bank in 1972. Santistevan claims that his signature was forged. He filed suit on September 27, 1977, against the Bank and the other defendants seeking to quiet title, to set aside a fraudulent conveyance, to obtain ejectment, and damages for fraud. Later on his own motion, the causes of action, except for damages, were dismissed. At his deposition on August 3, 1979, Santistevan admitted that he had grossly undervalued the property in the bankruptcy court so that he would be able to keep it, that he realized that he was thereby attempting to defraud his creditors, and that he had never deeded the property to his brother.

The State of New Mexico acquired the land by a tax deed issued by Taos County in 1970, but it has disclaimed any interest in this suit. Santistevan alleges that the Bank, via Quintana, has conveyed the land to Romero.

*Procedural issues.*

On August 7, 1979, the defendants filed a motion to dismiss, alleging that the plaintiff had no title to the real estate which was the subject matter of the suit, and that the plaintiff was not the real party in interest. A hearing on the motion was held the morning on which the trial was scheduled. At the end of the hearing, the court stated it would grant the defendants' motion. An order to this effect was entered on September 25, 1979.

Santistevan asserts that the motion to dismiss was not timely filed, in general, because it was based on an affirmative defense which the defendants should have included in their Answer or be barred from asserting. We disagree. A court can determine as a matter of law whether to dismiss a case in light of additional facts which will not, or cannot, be disputed, although appearing for the first time in the motion. *See, Benson v. Export Equipment Corp.*, 49 N.M. 356, 164 P.2d 380 (1945). Defendants assert that, because of his previous conduct, Santistevan has no cause of action. A motion for dismissal for failure to state a claim upon which relief can be granted may be made before trial after the pleadings are closed, N.M.R.Civ.P. 12(c) and (h), N.M.S.A. 1978, and such a motion may be treated as a motion for summary judgment if matters outside the pleadings are considered by the court. N.M.R.Civ.P. 12(b)(6), N.M.S.A. 1978; *Shriners Hospital for Crippled Children v. Kirby Cattle Co.*, 89 N.M. 169, 548 P.2d 449 (1976). Since the court did consider matters outside the pleadings, the motion should be treated as one for summary judgment. A defendant

may move for summary judgment at any time. N.M.R.Civ.P. 56(b), N.M.S.A. 1978.

Santistevan next argues that the motion to dismiss should not have been granted because such dismissal is proper only when it appears that the plaintiff cannot recover under any state of facts provable under the claim being made. *C & H Construction & Paving, Inc. v. Foundation Reserve Insurance Co.*, 85 N.M. 374, 512 P.2d 947 (1973). As we understand his argument, he asserts that under one set of facts he could recover —namely, if he were innocent of any fraud in failing to disclose the property in bankruptcy court. This argument thus reduces to one we will discuss later of whether the question of intentional concealment on his part is a matter of fact for the jury.

The third procedural argument made by Santistevan is that the real party in interest could have been joined or substituted, if the court thought that Santistevan was not that party. The issue, however, is not whether there are other parties who should bring this suit, but whether what Santistevan did or said with regard to the land during the bankruptcy proceedings will bar *him* from maintaining this action.

Santistevan then argues that the defendants changed theories at the time of the hearing, thereby denying him procedural due process. The motion to dismiss gave as grounds therefor that Santistevan was not the real party in interest since he had either conveyed the land to his brother or defrauded his creditors in the bankruptcy proceedings. At the hearing, the question of the deed to the brother was barely mentioned. The argument concerned whether Santistevan was precluded from bringing suit on the land, having concealed it in the bankruptcy proceedings. The defendants did not change theories at the hearing.

█ In his reply brief, Santistevan raises the objection that he did not have adequate notice of the hearing on the motion to dismiss. We presume he means by this that he did not have proper procedural notice. The motion to dismiss was filed by defendants on August 7, 1979. Seven days later, on August 14, 1979, a hearing was held on this motion. At the hearing, the defendants produced papers from the bankruptcy proceedings in 1970, as well as several other documents. The court accepted these documents into evidence. The transcript of the hearing reveals that the court considered information contained in the bankruptcy papers, as well as Santistevan's admission under oath in his deposition that he had perjured himself in the bankruptcy proceedings, having stated in 1970 that he had deeded the land to his brother when, in fact, he had not done so. When matters outside the pleadings are considered by the court, the motion to dismiss is to be treated as one for summary judgment. N.M.R.Civ.P. 12(b), N.M.S.A. 1978 states in part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.* (Emphasis added.)

The rule governing summary judgment, Rule 56(c), requires that there be at least ten days between the time the motion for summary judgment is served and the hearing on it is held. N.M.R.Civ.P. 56 (c), N.M.S.A. 1978. The issue of whether the ten day notice requirement of Rule 56 applies to motions to dismiss made under Rule 12(b)(6) which, because of the matters considered, are treated as motions for summary judgment has not been decided in this state. Our rules are similar to the Federal Rules of Civil Procedure, however. *See,* Fed.R. Civ.P. Rules 12 and 56. The general interpretation of the Federal Rules seems to be that the strict ten day requirement of Rule 56 need not be applied to a Rule 12(b)(6) motion when it is treated as a motion for summary judgment, as long as care is taken that the party opposing the summary judgment has had a full and fair opportunity to submit all pertinent materials and to argue the propriety of summary judgment. *See,* 6 Moore's Federal Practice, ¶¶ 56.02[3], 56.-

14[1] (1976); *see generally*, 73 Am.Jur.2d *Summary Judgment* § 14 (1974). To treat a motion to dismiss as a motion for summary judgment without permitting the adverse party a reasonable opportunity to present pertinent material is error. *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir.1978); *Franklin v. Oklahoma City Abstract & Title Co.*, 584 F.2d 964 (10th Cir.1978); *Plante v. Shivar*, 540 F.2d 1233 (4th Cir.1976).

■ We need not decide the issue of whether Santistevan had adequate notice of the proceedings, however, since he did not raise this issue properly on appeal. N.M.R. Civ.App.P. 9, N.M.S.A. 1978 provides that the brief-in-chief shall present arguments and authorities for each point relied on by the appellant, and that the reply brief shall be directed "only to new arguments or authorities *presented in the answer brief* . . . ." (Emphasis added.) Id., Section o. The question of inadequate notice—by which Santistevan appears to mean that he did not know, until he arrived in court on the day of trial, that the motion to dismiss, served on him a week earlier, would be argued that day—is not raised in the brief-in-chief. Even if this argument could be gleaned from minute scrutiny of his brief-in-chief, we would not be obligated to consider it. An appellant's burden is to point out clearly the claimed error of the trial court. *See, Perez v. Gallegos*, 87 N.M. 161, 530 P.2d 1155 (1974). Santistevan has not done so. We are not required to surmise what error is claimed. The contention that plaintiff had inadequate notice first appears in the reply brief. Contrary to Rule 9, it is not raised in response to a new argument presented in the answer brief. An appellant must point out any alleged error to the reviewing court, and must demonstrate the error by argument and citation of authorities in support of his position. *Petty v. Williams*, 71 N.M. 338, 378 P.2d 376 (1963). An appellant who fails to include an argument in his brief-in-chief and then inserts it in his answer brief without clear formulation and the support of any authority cannot complain when the reviewing court fails to consider the argument. *See, Novak v. Dow*, 82 N.M. 30, 474 P.2d 712 (Ct.App.

1970). Santistevan's argument concerning inadequate notice is not mentioned until his reply brief, where its formulation is unclear, and no authority is given to support it. We cannot consider it.

*Substantive issues.*

■ Summary judgment shall be rendered when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. N.M.R.Civ.P. 56(c), N.M.S.A. 1978. The party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue of material fact is in dispute. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Since we have determined that defendants' motion for dismissal is to be treated as one for summary judgment, these rules apply.

Santistevan argues that the question of whether he intentionally concealed the real estate in the bankruptcy proceedings is a question of fact and should be decided by a jury. We agree that this is a question of fact and should be decided by a jury. We agree that this is a question of fact; but the record does not indicate that it is in dispute. Santistevan admitted in his deposition that he had concealed from his creditors, first, the true value of the property, and then, the fact that he owned it at all, for the express purpose of keeping the property. He said he knew he was defrauding his creditors, and that criminal charges could be brought against him for filing a false statement in federal court. At the hearing, his lawyer admitted that Santistevan had lied in the bankruptcy proceedings; and the record of the proceedings shows that Santistevan first listed the land as having a value of $2,475.00 and then amended his petition, claiming the land was not his. Santistevan does not deny that he intentionally concealed his land in Costilla from the bankruptcy court; but, he asserts, this activity does not affect the strength of his title to the land or have any bearing on the suit he now wishes to entertain against third parties in a dispute over this land.

The argument thus becomes whether, as a matter of law, Santistevan is barred from bringing this suit. We hold that he is.

On the issue of whether a bankrupt who fails to list property in bankruptcy proceedings can thereafter assert title to the property, the United States Supreme Court wrote:

> It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up ... thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value ... it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property.

*First National Bank of Jacksboro v. Lasater*, 196 U.S. 115, 119, 25 S.Ct. 206, 208, 49 L.Ed. 408 (1905). Although there are some courts which have held that a bankrupt who is not guilty of fraud, but who fails to list an asset in his bankruptcy schedule is not thereafter precluded from maintaining a cause of action on the omitted property, *Watson v. Planters & Citizens Bank*, 110 Ga.App. 725, 140 S.E.2d 30 (1964); *McAulton v. Smart*, 54 Haw. 488, 510 P.2d 93 (1973); *Loose v. Brubacher*, 219 Kan. 727, 549 P.2d 991 (1976); *Stipe v. Jefferson*, 192 Minn. 504, 257 N.W. 99 (1934); *Philbrick v. Burbank*, 101 N.H. 311, 141 A.2d 888 (1958); *Suetter v. A.E. Kern & Co.*, 146 Or. 96, 29 P.2d 534 (1934); *see, Watson v. Motley*, 201 Ala. 25, 75 So. 147 (1917), there are other courts which have held the opposite. *Moore v. Slonim*, 426 F.Supp. 524 (D.Conn.1977); *Brangan v. United States*, 373 F.Supp. 1050 (E.D.Va.1973); *Hermsmeyer v. A.L.D., Inc.*, 239 F.Supp. 740 (D.Col.1964); *Scruby v. Norman*, 91 Mo.App. 517 (1902). We need not decide which rule we would adopt since the case before us clearly involves fraud on the part of the bankrupt. When fraud is involved, the cases that we have found all hold that the bankrupt later cannot lay claim in court to the previously fraudulently concealed asset. The rule is, as stated in *Suetter*, that, "[w]here the bankrupt fraud-

ulently conceals any property from the creditors or the trustee until after his discharge, he may not thereafter assert any claim to or arising out of such concealed property." *Suetter* at 109, 29 P.2d at 539. *Accord, Taliaferro v. Lynn*, 190 Okl. 237, 123 P.2d 243 (1942); *Brown v. Medo Land Creamery Co.*, 240 Or. 625, 403 P.2d 383 (1965). In explaining this rule, the court in *Scruby* wrote:

> Can it be that ... when by fraud and perjury [a bankrupt] is enabled to withhold [property] from the administration of his estate by the trustee, that his title and interest in such [property] survives in him and the bankruptcy proceeding and can be asserted by him in a judicated proceeding after his discharge in bankruptcy; or, if such title and interest does not survive the adjudication, is it *ipso facto* revived by the discharge? To answer these queries in the affirmative would be to invite the commission of the gravest fraud and perjury, which it is safe to assume was never intended by the bankrupt law.

*Scruby* at 521–22. Courts which have allowed the discharged bankrupt to pursue his claim on an asset that he failed to list in the bankruptcy schedule often have noted that the bankrupt was not guilty of fraudulent conduct. *Motely; McAulton; Stipe; Suetter; see, Loose, cf., Planter & Citizens Bank* (trustee in bankruptcy knew of the asset); *Philbrick* (plaintiff said he had forgotten about the asset when he filed in bankruptcy and thought it was worthless), *but cf., Smith v. Arkansas Fuel Oil Co.*, 219 La. 982, 54 So.2d 421 (1951) (court, without mentioning whether the bankrupt had been fraudulent or blameless in failing to list an asset in the bankruptcy proceedings, allowed his heirs to maintain a suit on that asset).

Santistevan's fraudulent concealment of his real property during the bankruptcy proceedings ten years ago precludes him from now maintaining a suit involving his claimed ownership of the land. The defendants were entitled to judgment as a matter of law; summary judgment was properly granted.

Santistevan's other arguments are without merit and may be discussed summarily. 1. It is immaterial that Santistevan disclosed the existence of the land to the trustee in bankruptcy, since he grossly undervalued it and then claimed that he didn't own it after all. The net effect of this behavior was the same as if he had never mentioned the land. 2. While this particular cause of action did not arise until after the discharge in bankruptcy, the property over which the dispute centered was owned by Santistevan at the time of the bankruptcy. It is Santistevan's right to maintain a suit involving this particular property which is barred, not his right to sue in general on a cause of action arising after the bankruptcy proceedings. *See*, 4A Collier on Bankruptcy ¶ 70.09 (14th ed.1978). 3. The fact that, under the current bankruptcy code, 11 U.S.C. § 541 (Supp. III 1979), the trustee in bankruptcy no longer takes title to the debtor's property may have some bearing on the effect of abandonment of an asset, *see*, 4 Collier on Bankruptcy ¶ 554.02[2] (15th ed.1980), but we are not concerned here with an asset that has been abandoned. An asset which was concealed from the trustee in bankruptcy cannot be considered abandoned by him. *Lasater, supra; Moore, supra; Hermsmeyer, supra; Planter & Citizens Bank, supra; Philbrick, supra*. 4. We need not decide whether Santistevan is the only party who could maintain this suit, or who the real party in interest is. The important point is that Santistevan cannot assert a cause of action arising out of the controverted property.

If a trial court's judgment can be sustained upon correct legal principles, it will not be reversed. *Albuquerque National Bank v. Johnson*, 74 N.M. 69, 390 P.2d 657 (1964). Santistevan's fraudulent concealment of the Costila property from the trustee in bankruptcy precludes him from now maintaining a suit arising out of his claimed ownership of this property.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

ANDREWS, J., concurs.

WALTERS, J., dissenting.

WALTERS, Judge (dissenting).

I respectfully dissent. The majority opinion approves a determination, made by the trial court upon defendants' motion to dismiss, that plaintiff "does not own the rights sought to be enforced." The defendants moved to dismiss, alleging that if the transfer to plaintiff's brother had not been made in 1970, "plaintiff defrauded his creditors in a subsequent bankruptcy proceedings and such creditors are the holders of the beneficial interest in said land." Plaintiff's deposition and some records of the 1970 bankruptcy case were accepted by the court in support of the motion at the hearing, and the motion was granted. This, of course converted the hearing to one for summary judgment. *Shriners Hosp. v. Kirby Cattle Co.*, 89 N.M. 169, 548, P.2d 449 (1976).

A motion to dismiss is an admission by defendants of all material facts well pleaded. *Runyan v. Jaramillo*, 90 N.M. 629, 567 P.2d 478 (1977). It may not be granted unless it appears that plaintiffs cannot recover under any state of facts provable under the claim being made. *Eldridge v. Sandoval County*, 92 N.M. 152, 584 P.2d 199 (Ct.App.1978). Plaintiff's complaint, alleging a fraudulent scheme by defendants and forgery of a conveyance from plaintiff, states a claim for relief. Obviously the motion was not considered as a motion to dismiss.

I cannot agree that questions of the real party in interest or whether fraud existed in plaintiff's prior conduct—both of which properly are affirmative defenses to be pleaded as such—are correctly decided by motion, whether termed a motion to dismiss or, as happened here, it becomes a motion for summary judgment, when the party moved against has not been afforded the period of notice mandated by Rule 56, N.M. R.Civ.P., N.M.S.A. 1978.

The majority opinion recognizes defendants' motion as one "to be treated as a motion for summary judgment," and the error of treating "a motion to dismiss as a

motion for summary judgment without permitting the adverse party a reasonable opportunity to present pertinent material" in opposition. Rule 12(b) says more: the motion shall also "be treated . . . and disposed of as provided in Rule 56." "Reasonable opportunity" need not be construed to be less than ten days, as the majority seems willing to suggest; Rule 56 is not at all ambiguous regarding the time limit of the "opportunity" to be afforded the one moved against. Plaintiff received "notice" that the motion would be treated as a summary judgment motion when matters outside the record were presented and relied on by the movant on the morning the motion was heard. He was entitled, therefore, "as provided in Rule 56," to ten days thereafter within which to meet the arguments raised and the evidence received.

The majority avoids discussing the error it allegedly recognizes, however, by holding that the first eight pages of plaintiff's argument in his Brief-in-Chief, all of which is directed to the procedural defects of the hearing and the trial court's decision immediately following the hearing, do not "properly" raise the issue of inadequate notice on appeal. It is apparent at page 3 of the Answer Brief, and contrary to the statement of the majority opinion, that appellees recognized one of plaintiff's grievances to be his dissatisfaction with conversion of a motion to dismiss on the morning of trial to one for summary judgment, and an immediate decision thereon. Plaintiff's brief unequivocally argues his surprise with, and the impropriety of, permitting defendants "to present their evidence in support of their affirmative defense [of lack of real party in interest] and we have been denied the opportunity to present any evidence to establish our prima facie case and to refute the defense [specified in the motion.]" This language clearly conveys to me a discernible argument that presentation of evidence outside the pleadings by the movant, on a factual question not raised in the motion, must be allowed only when the party moved against has been afforded the opportunity to anticipate the use of such evidence in order to be prepared to meet it with answering evidence of his own.

To say that the arguments in either the Brief-in-Chief or the Reply Brief do not clearly formulate a protest against inadequate notice of the nature of the motion is not accurate. Plaintiff again and again urges that the motion alleged failure to join the real party in interest. A resolution of *that* defense at the hearing should have resulted in allowing joinder or substitution under R.Civ.P. 17(a), N.M.S.A. 1978—not in a determination that because defendant had committed a bankruptcy fraud he had lost his right to bring suit. If the briefs of plaintiff were not written as precisely as the majority would prefer concerning notice, the protestations against receipt of outside evidence on a motion to dismiss, without opportunity given to rebut that evidence, is nevertheless pervasive throughout plaintiff's arguments. A consideration of the substance, not the form, of the matter brought for review, should always govern the duty of an appellate court in reaching a decision upon the merits of an appeal. *See Tomson v. County of Dona Ana*, 93 N.M. 173, 598 P.2d 216 (Ct.App.1979); *Westbrook v. Lea General Hospital*, 85 N.M. 191, 510 P.2d 515 (Ct.App.1973) (per Lopez, J., Wood, C. J., and Sutin, J. concurring).

The "facts" recited in the majority opinion are not complete, nor are they, in my opinion, completely accurate. The opinion refers persistently to "concealment" and "intentional concealment" and "fraudulent concealment" of an asset in the bankruptcy court. The documents from the bankruptcy records introduced by defendants include an original petition in bankruptcy filed by plaintiff. It discloses a claim of ownership in 75 acres of land at Costilla (the supposedly concealed asset), subject to a judgment lien for water rent. Subsequently, a first amended petition was filed alleging that the Costilla land had been transferred to petitioner's brother because petitioner had not been able to repay $1,500 advanced by his brother to pay off a mortgage on the land. The amended petition asked only that the question contained in the bankruptcy form, which inquired about transfer of property during the year immediately preceding the filing of the original petition,

be amended to reflect the transfer mentioned above. It did not request or suggest that the land be removed from Schedule B-1 of the original bankruptcy petition, where that asset was listed under "Real Estate ... owned by debtor...."

About three weeks later, the trustee in bankruptcy petitioned the Bankruptcy Court for authorization to abandon as an asset the Costilla land, stating in his petition that "[a]fter investigating, it is the trustee's opinion that any possible recovery from these assets [sic] would be more than offset by the expense involved in converting them [sic] into cash." The court not only "authorized," but "directed," the trustee to abandon the land as an asset of the bankruptcy estate.

These documents refute any characterization of plaintiff's conduct in the bankruptcy proceeding as a "concealment" of assets. The trustee, too, had an obligation to protect creditors and, "after investigating" the asset listed by plaintiff, he officially and on the record expressed his opinion that the land was not a distributable asset. Plaintiff should not have been foreclosed from presenting controverting evidence or affidavits on an issue determined by the court to be his ineligibility to pursue this suit because he had defrauded his creditors. To reach that conclusion, the trial court had to decide that creditors, had indeed been defrauded by plaintiff's conduct in the bankruptcy action. In order to make that decision, the court necessarily resolved conflicts in plaintiff's deposition testimony regarding his knowledge about false statements of valuation in the bankruptcy petition, advice from his attorney at that time to so evaluate it, the uncertain status of the land, and the trustee's signed pleadings regarding its value and his request for authority to abandon the very asset which defendants claim was not listed and the majority describes as "concealed."

Whether or not plaintiff defrauded his creditors so as to call into effect the rule cited by the majority opinion, of forfeiting the right to maintain a later claim to omitted property, is a factual question. Conflicts in the evidence on material issues which may have legal consequences may not be decided by summary judgment. *Young v. Thomas,* 93 N.M. 677, 604 P.2d 370 (1979); *see also, Gallegos v. Wallace,* 74 N.M. 760, 398 P.2d 982 (1964). None of the cases relied on by the majority determined that plaintiff was barred from maintaining his action because of fraud on his creditors, without a full-blown trial on the claim of fraud. Moreover, the rule is not uniformly applied. Several jurisdictions have reached an opposite result and permitted the bankrupt to assert a claim of ownership in an unadministered bankruptcy asset. *See Philbrick v. Burbank,* 101 N.H. 311, 141 A.2d 888 (1958); *Stripe v. Jefferson,* 192 Minn. 504, 257 N.W. 99 (1934); *In re Webb,* 54 F.2d 1065 (4th Cir. 1932). I do not approve the application of the rule espoused by my colleagues under the facts of this case, even if fraud were proven at trial, when it serves to benefit not the allegedly defrauded creditors but absolute strangers to the bankruptcy action.

The trial court abused its discretion in ruling on the motion at the conclusion of the hearing. *Georgia S. & F.R. Co. v. Atlantic C.L.R. Co.,* 373 F.2d 493 (5th Cir. 1967), *cert. den.* 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967).

The judgment should be reversed and remanded either for a proper hearing on defendants' motion and notice for summary judgment; or the defense of plaintiff's forfeiture of the right to maintain this action by reason of the bankruptcy proceedings should be fully litigated at trial and presented to a jury for decision. *See Suetter v. A. E. Kern & Co.,* 146 Or. 96, 29 P.2d 534 (1934); *Watson v. Motley,* 201 Ala. 25, 75 So. 147 (1917). Even the *Laster* decision, cited and quoted by the majority, was reached only after a full trial on the fraudulency of plaintiff's prior conduct in the bankruptcy proceeding.