### BOWMAN v. TOWERY.

No. 33747.   April 29, 1952.

Rehearing Denied July 23, 1952.

*248 P. 2d 1030.*

H. A. Ledbetter, Ardmore, and Twyford, Smith & Crowe, Oklahoma City, for plaintiff in error.

Long & Long, Ada, and C. H. Bowie, Pauls Valley, for defendant in error.

O'NEAL, J.   This is an action to quiet title to ten acres of land, the northwest quarter of the southwest quarter of the southwest quarter of section 9, township 1 north, range 2 west, Garvin county.

Plaintiff in error, R. L. Bowman, commenced the action against I. R. Tolbert and alleged that he, Bowman, is the legal and equitable owner and in possession of said land; that he derives his title as follows: By patent to Napolean White, an intermarried citizen of the Choctaw Tribe of Indians; conveyance by White in 1911 to J. S. Mullen; that J. S. Mullen was adjudged a bankrupt in November, 1922, and that said tract of land was ordered sold by the trustee, and the trustee executed a deed dated September 23, 1929, conveying said land to plaintiff, R. L. Bowman.   Plaintiff further alleged that defendant, I. R. Tolbert, claimed some right, title, or interest in said land based upon a quitclaim deed by J. S. Mullen to S. M. Muse and a quitclaim deed by S. M. Muse to I. R. Tolbert; that Tolbert had no title for the reason that J. S. Mullen was still in bankruptcy when he executed the quitclaim deed to S. M. Muse, and had not been discharged.

Defendant in error herein, Mattie H. Towery, intervened and claimed title based upon a resale tax deed issued by the county treasurer of Garvin county, dated December 2, 1922, conveying the land to her then husband, W. H. Pittman (now deceased).   Each of the three parties also claimed title by prescription based upon alleged open, notorious,

continuous and exclusive possession for more than fifteen years.

We first consider the assertion of plaintiff in error in proposition one in his supplemental brief to the effect that the finding of the trial court that Mattie H. Towery (defendant in error) had been in open, notorious and exclusive possession of the ten-acre tract of land in question for more than fifteen years is against the clear weight of the evidence. Said assertion is without foundation. The trial court made no such finding in substance, or effect. The trial court stated from the bench that "the court fails to find that either of the parties have sustained by a preponderance of the evidence that either of them, or that the intervener, or that plaintiff or the defendant, have been in possession of the property for fifteen years continuously, uninterruptedly and notoriously to the exclusion of all other parties * * *." The record shows that the land belonged to J. S. Mullen, who on November 13, 1922, was adjudged a bankrupt, on an involuntary petition filed September 12, 1922. It had been previously sold to Garvin county on the 23rd day of November, 1919, for the 1918 taxes, two years nine and one-half months before petition in bankruptcy against J. S. Mullen was filed, and was sold at resale on November 27, 1922, by the county treasurer of Garvin county and was bought by W. H. Pittman, the then husband of the intervener, Mattie H. Towery. The resale deed was issued on December 2, 1922, nineteen days after J. S. Mullen was adjudged a bankrupt. J. S. Mullen was never discharged from bankruptcy before his death.

The intervener testified that her husband went into possession of the property shortly after he acquired the resale tax deed by going out and looking at the land, and that he paid the taxes on the same up to and including the year 1934. In 1929 said ten-acre tract was sold through bankruptcy proceedings to the plaintiff, R. L. Bowman.

The regularity of the bankruptcy proceedings is not questioned. Bowman claimed that he went into possession of the property in 1930 or 1931 by going on the property and making a rental agreement with a colored man by the name of Pease who owned the remaining 150 acres in the quarter section in which this ten acres is located, and later by the possession of a tenant named Burton who occupied the property after Pease left it. Pease had fenced the land in with 150 acres he owned in the same quarter section. One S. M. Muse obtained a quitclaim deed from J. S. Mullen while the bankruptcy proceedings were pending, and conveyed the property by quitclaim deed to I. R. Tolbert. It seems clear that the taxes on the land up to 1934 were paid by the intervener's husband, W. H. Pittman (now deceased), or by their attorney. After 1934 it is not clear just who paid the taxes, but the taxes for the year 1944 and subsequent years were paid by plaintiff, R. L. Bowman. The ten acres was rough land in the southwest part of Garvin county, unimproved, and not actually occupied by anyone. As stated before it appears to have been fenced in by Pease and made a part of his pasture. There is nothing to show that the intervener was on the land at any time after 1934, or did anything to exercise ownership of the property. There is testimony that Sam Muse occupied the property and claimed it as his own, but inasmuch as his title was based on the deed from Mullen, who was a bankrupt, Muse had no title, and neither did he have anything to pass on to Tolbert.

The trial court held that no party to the lawsuit had established a right to the property by reason of adverse possession, and that the resale deed to Pittman was void for the reason that the land was in custodia legis, but that the conduct, or action, of the trustee in drawing down the money from the county treasurer amounted to a ratification or confirmation of the resale, and for that reason the court entered judg-

ment for the intervener, Mattie H. Towery. Tolbert does not appeal.

It is fairly well settled that while property in the course of administration under the bankruptcy laws is not exempt from taxation, or freed from tax liens or claims theretofore fixed upon it, it is, nevertheless, in custodia legis, and a pre-existing tax lien or claim cannot be converted to a full title by the procurement of a tax deed without the bankruptcy court's sanction. In re Eppstein, 156 Fed. 42, 17 L. R. A. (N. S.) 465; Dayton v. Stanard, 241 U. S. 588, 60 L. Ed. 1190; Brictson Manufacturing Co. v. Close, 25 F. 2d 794.

But it does not necessarily follow that the trustee of a bankrupt estate, during the process of administering the estate, may not elect to accept the excess money over and above the delinquent taxes, penalties, interest and costs for which the real estate sold at tax resale, instead of the land. The record shows that Hal M. Cannon, trustee in bankruptcy, accepted and endorsed the check of the county treasurer in payment of a refund of the excess price of the land sold at said resale. And the record clearly indicated that Cannon did more than merely endorse said check. The tax resale was had while Compiled Statutes of 1921 were in force. Section 9746, C. O. S. 1921, in the last sentence thereof provided:

"And any tract or lot of land sells for more than the taxes, penalties, interest and costs due thereon, the excess shall be turned into the county treasury and there be held for the prior owner of such land to be withdrawn any time within two (2) years, and at the end of two (2) years if the same is not withdrawn or collected from the county treasurer the same shall be turned into the county sinking fund."

That is still the law (68 O. S. 1941 §432f) except as to where same shall go if not withdrawn within two (2) years.

The record shows that at the resale the ten-acre tract sold for $29 more than the total amount of taxes, penalties, interest and costs due thereon. The record further shows that on November 28, 1924, a few days less than two years after the resale tax deed was issued, the county clerk of Garvin county issued his clerk's voucher S. E. & I. Form No. 1441 in the following form:

"Clerk's Cash Voucher S.E.&I. Form 1441

"Pay. No. 119                    No. 2197
          "Office of County Clerk
          "Garvin County, Oklahoma
"Pauls Valley, Okla.      Nov. 28, 1924.
"To the County Treasurer:
"Pay to the order of
     Hal M. Cannon, Trustee, J. S. Mullen
     Est. _____$86.39
Eighty six & 39/100 _____Dollars.

"Refund 1922 Re Sale on W2 W2 SW Sec. 1-1N-1W & N2 NW NE Sec. 8, 1N 1W-NW SW SW Sec. 9 IN 2W Charge: Account Refund
1922 Re Sale                   1922 Re Sale

"By Order of the County Clerk L. Z. Ashurst, Clerk

                    "Claim No. 2197."

The record does not show when the claim was filed, but it was necessarily filed prior to issuance of the voucher. The voucher includes the $29 refund on the sale of the land involved. The voucher shows that it was No. 2197 and was issued under claim No. 2197. That claim was not produced and offered in evidence, nor does the record show by whom said claim was made. But since the voucher was to the order of Hal M. Cannon, trustee, J. S. Mullen estate, and since the check of the county treasurer in payment thereof was made payable to the order of Hal M. Cannon, trustee, the clear presumption would necessarily be that Hal M. Cannon, trustee of J. S. Mullen estate, must have signed and presented the claim for the refund in question. If so, that clearly indicates that the trustee intended to and did surrender, relinquish, release and abandon any and all claims to the land itself and take in lieu thereof the $29 for which the land sold over and above all taxes, interest, penalties and cost due thereof.

Subsequent events tend to show that that was not an unwise decision and was probably for the best interest of the bankrupt estate, in that in 1929, when the trustee in bankruptcy did sell the land, subject to taxes, liens, etc., it sold for only $5, or $24 less than the amount of refund on the county treasurer's sale.

It is well settled that the trustee in bankruptcy of a bankrupt estate not only may, but it is his duty, to refuse to administer property that is encumbered for more than it is worth, or for other reasons may be onerous or unprofitable to the estate. Kimmel v. Crocker, 72 F. 2d 599; First National Bank of Ardmore v. Bonner, 74 F. 2d 139; Stanolind Oil & Gas Co. v. Logan, 92 F. 2d 28; 8 C. J. S., Bankruptcy, §201; 6 Am. Jur., Bankruptcy, §932, p. 1105.

It is within the power of the trustee in bankruptcy, with the knowledge and approval of the Referee in Bankruptcy, to elect to take the excess money for which the land sold over and above the delinquent taxes, penalties, interest and costs. The record shows that he elected to, and did, receive the excess money for which the land sold at resale.

There is nothing in the record showing that the trustee applied for and obtained a formal order authorizing and approving the acceptance of the excess money derived from the sale. It is true that the better practice calls for the obtaining of a formal order. However, a trustee in bankruptcy may surrender, relinquish, release and abandon property as onerous and unprofitable without a formal order of the court, and under certain conditions such may be implied from the acts and conduct of the trustee in bankruptcy. 6 Am. Jur., Bankruptcy, §934, 1107; Dushane v. Beall, 161 U. S. 513, 40 L. Ed. 791.

Whether or not the trustee did surrender, relinquish, release and abandon the property is a question of fact. In connection with this matter the record discloses that Hal M. Cannon, trustee, testified that before taking any action pertaining to bankrupt estate, he invariably applied for and obtained an order of authorization from the Referee, and that in this instance he conferred with the Referee and got his approval. There is no evidence to the contrary. It is, therefore, clearly established that when the trustee in bankruptcy, with the approval of the Referee, accepted from the county treasurer of Garvin county $29, the excess amount for which the real estate sold at resale over and above the delinquent taxes, interest, penalties and costs, he elected to take said excess instead of asserting an interest in and to the land itself. It follows that said estate could not accept the excess and then later sell the land subject to the delinquent taxes, penalties, interest and costs in the course of bankruptcy proceedings for the reason that said estate had no interest in the land to sell. The trustee in bankruptcy, having accepted the excess amount over and above the delinquent taxes, penalties, interest and costs for which the property sold at resale to W. H. Pittman, who was then the husband of Mattie H. Towery, could not thereafter sell it through the bankruptcy court and deliver good title to the purchaser. After having elected to surrender the estate's interest in the land, and having acted on the election, the trustee may not legally repudiate his acts and reclaim the land.

True, Mr. Cannon testified that he did not receive the $29. Mr. Suggs, who also endorsed the voucher, testified as positively that he did not receive said $29. Someone did get the money. The bank records show that there was a check of the county treasurer in the sum of $86.39 paid by the bank on December 5, 1924. The voucher in question was for $86.39 and included the refund of $29 on the land here involved, along with the refund on the sale of other lands.

During the progress of the trial the plaintiff, Bowman, testified that prior to the filing of this action to quiet title

he executed an oil and gas lease upon the ten-acre tract, which lease is now held by the Warren Petroleum Company and J. E. Crosby, Inc., by assignment; that he received a bonus for said lease in the sum of $20,000; that subsequent to the filing of this action he executed a mineral deed conveying an undivided one-half interest in the minerals for a consideration of $5,000. Thereupon counsel for the defendant and intervener, in open court, requested leave to amend their pleadings to conform to the proof and for recovery of the $20,000 received by plaintiff. No request was made to amend for the recovery of the $5,000 received by plaintiff on the sale of the one-half interest of the minerals subject to the oil and gas lease. Though the case proceeded to judgment, no written amendment was filed by either the defendant or the intervener. The intervener contends:

"Where permission is given during the trial to amend the petition (intervener's cross-petition) to conform with the proof, proper practice requires that the amendment shall actually be made; but, if leave to amend is given and the cause is tried as though the amendment had been made, this court will consider the order as standing for the amendment itself."

We so held in Owens v. Taylor, 90 Okla. 96, 213 P. 300; Dierks v. Walsh, 203 Okla. 113, 218 P. 2d 920.

We are, therefore, confronted with the question whether the court's judgment in favor of the intervener for the recovery of the $20,000 item can be sustained. Bowman, as noted, held under a deed from the trustee in bankruptcy. That he had reasonable grounds to believe and, therefore, acted in good faith in assuming ownership of the land is not open to debate. In executing the oil and gas lease upon the land he was acting solely in his own behalf and not as the agent of the intervener, or under a relationship of debtor and creditor. The money, as such, was not the money of the intervener and therefore cannot be recovered by her as on account for money had and received. The record does not disclose on what theory the court's judgment was founded, other than the recitation in the journal entry of judgment. In this judgment, after a recitation with reference to the execution of the oil and gas lease, the court states:

"* * * and that intervenor (sic), Mattie H. Towery elected in open court to receive the proceeds therefor and ratify the oil and gas lease in open court and recover of and from said plaintiff said sum of money so received for said lease being the value thereof; and that the plaintiff received the sum of $20,000.00 for said lease which he is not entitled to keep or retain, and the intervenor (sic), Mattie H. Towery is entitled to have said sum of money which R. L. Bowman received, and is entitled to a personal judgment against R. L. Bowman for said $20,000.00, being the amount that R. L. Bowman received for said lease, and proceeds of the sale thereon."

That the intervener ex parte elected, in open court, to receive the proceeds of the sale of the oil and gas lease and to ratify the lease, provided she got the $20,000 from Bowman, does not bind Bowman or make him liable to pay her said sum. He is here contending that the intervener's claim injected a new and distinctive cause of action, which is not supported by pleadings or proof or the subject of equity practice. The author in 30 C. J. S., Equity, §77, at p. 435, states the rule as follows:

"The doctrine of retaining jurisdiction to settle the entire controversy is confined to the determination of rights dependent on, or at least germane to, the subject matter and main purpose of the bill. Jurisdiction will not be retained to adjust independent controversies between the parties, or controversies beyond the scope of that raised by the bill."

The intervener asserts that the judgment must be sustained under this court's holding in Duncan v. Anderson, 120 Okla. 194, 250 P. 1018, where the court held:

"Privity of contract is not necessary to support an action for money had and received, and the only privity required is that arising from a promise implied by law that the defendant, having money in his hands that rightfully belongs to plaintiff, will pay it over to him."

The statement of facts prepared by the commissioner leaves much to be desired for a clear understanding of that case. As we construe the recited facts, Anderson deposited $1,100 in the Grandfield Bank as a special deposit. The bank agreed to loan the sum to reliable parties and look after its collection. While the sum was on special deposit Anderson drew her check in favor of Duncan, and Duncan's account on the books of the bank was credited in the amount of the check. Although Duncan, by answer, denied knowledge of the bank credit to his account, it is shown he withdrew the credits in the regular course of business. Duncan, by answer, alleged that at the demand of the Bank Commissioner he repaid the bank, then in liquidation, the sum of $1,100 so credited to him by the bank. This court held that the original deposit of $1,100 made by Anderson to the bank was a special deposit. The Bank Commissioner necessarily treated the credit of the item to Duncan's account as a loan by the bank to him. This position is sustained by the fact that Duncan repaid the exact sum to the bank then under liquidation by the Bank Commissioner. We then have remaining a situation where, under facts not in dispute, Duncan had borrowed the sum of $1,100 from Anderson through the agency of the bank, and, not having repaid the loan, that Anderson by her petition stated a good cause of action and that Duncan's answer failed to state a defense thereto.

As we review the decision relied on, the action, in fact, was for the recovery of a sum of money which Anderson had loaned Duncan, and whether the cause of action be characterized as an action in assumpsit as for money had and received is immaterial, because Anderson created the special deposit and Duncan received it as a direct loan, and having refused to repay the loan, plaintiff was entitled to a recovery.

In the instant case Towery did not create the fund sought to be recovered, nor is she entitled to a recovery of the fund as such. If the transaction here presented resulted in damage or injury to her land, her legal title, or rights therein, remedy for such damages is available under appropriate allegations and proof in support thereof. An action in assumpsit as for money had and received is discussed in 4 Am. Jur., Assumpsit §45, wherein the author states:

"In order to warrant a recovery in an action of assumpsit, the plaintiff must prove either an express contract, or facts and circumstances from which a contract sufficient to sustain the action will be implied."

The same author, under §21 at page 512, says:

"It has frequently been held, however, that a promise will not be implied where the defendant, instead of receiving money as the money of the plaintiff for his use, claims and receives it as his own."

The principle thus announced is supported by the court in Third National Bank of St. Louis v. Rice, 161 Fed. 822, where the court says:

"Held that, the money having been received under claim of right, there was no promise on the part of the defendant implied from the transaction which would support an action against it by plaintiffs for money had and received to their use."

In 2 R. C. L., Assumpsit §6, at page 747, the author states:

"The action of assumpsit lies for the enforcement of a contract express or implied but the contract must necessarily contain all the essentials of an enforceable contract; thus it must be based upon a valid and sufficient consideration, and there must be privity of contract established betwen the parties."

The same author, in differentiating between an express contract and an implied contract pointing out the character of evidence necessary to establish them, in 2 R. C. L. §6, at page 747, states:

"To constitute either the one or the other the parties must occupy toward each other a contract status, and there must be that connection, mutuality of will, and interaction of parties, generally expressed, though not very clearly, by the term 'privity.' "

This was an equitable proceedings, and ordinarily all questions necessary for decision may be disposed of in the action, but where, as here, no amendment as requested was formalized, and as the transaction with reference to the bonus money was not germane to the issue as to who had title to the land in question, and the holders of the oil and gas lease are not parties to the suit, proper judicial practice should require the court to consider only matters necessary for judicial determination upon which proper pleadings and proof are submitted.

The judgment of the trial court, insofar as it decrees the intervener, Mattie H. Towery, to be the owner of the tract of land in litigation and barring plaintiff of any right, title, or interest therein, is by the court affirmed.

The judgment of the lower court in rendering a judgment in favor of the intervener against the plaintiff in the sum of $20,000 with interest thereon is by the court reversed.

ARNOLD, C. J., and WELCH, GIBSON, and JOHNSON, JJ., concur. HALLEY, V. C. J., and DAVISON, J., concur in part and dissent in part. CORN, J., dissents.