(No. 34843.— )
JULIUS COPELAND *et al.*, Appellees, *vs.* HARVEY H. COPE-
LAND *et al.*—(MELVIN ZARBIN *et al.*, Appellants.)

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

12

SCHUYLER, STOUGH & MORRIS, of Chicago, (DANIEL M. SCHUYLER, JAY STOUGH, and JOSEPH R. JULIN, of counsel,) for appellants.

MAYER GOLDBERG, LEONARD L. LEVIN, CHARLES F. GRIMES, WILLIAM B. GARRETT, and JAMES W. BAYER, all of Chicago, for appellees.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

This action was commenced in the superior court of Cook County on November 17, 1954, by Julius Copeland, the owner of an undivided ⅔ interest in two lots located in the city of Chicago, to partition the property and to remove as a cloud upon title certain adverse interests arising by reason of a recorded quitclaim deed outside plaintiff's chain of title, and from a claim of easement asserted by the owners of neighboring property. Harvey H. Copeland, plaintiff's cotenant; Melvin Zarbin, the grantee named in

said quitclaim deed; Lake Shore National Bank, the trustee holding legal title to the neighboring property; Pritikin Furniture Company, a partnership, the lessee of the neighboring property; and Sarah Zarbin Pritikin, Renee Pritikin Martin, Harry Zarbin, Richard Zarbin, and Gloria Zarbin, the equitable owners of the neighboring property, were all made parties defendant to these proceedings. The matter was referred to a master in chancery who found that none of the defendants except the cotenant had any interest or claim in the Copeland lots and that the premises should be partitioned in accordance with the prayer of plaintiff's complaint. From a decree confirming the master's report, direct appeal has been taken to this court.

For the sake of convenience the subject property will hereinafter be referred to as Tract A and the neighboring property as Tract B. The former tract, consisting of lots 132 and 133 in Crane and Wesson's Subdivision of the city of Chicago, fronts for a distance of 48 feet along the south side of West Grenshaw Street, an east-west public thoroughfare, and extends back some 83 feet to an east-west public alley which adjoins it on the south. The tract is bounded on the east by another 10-foot alley, this one running north and south, and on the west by a private residence. Tract B, being comprised of lots 135 through 140 of the same subdivision, lies on the east side of said north-south alley immediately across from Tract A and is bounded on the south by West Roosevelt Road (an east-west street), on the east by South Morgan Street, and on the north by a private residence which separates it from West Grenshaw Street. Tract A is unimproved except for concrete surfacing upon the easterly half thereof, and the east half of the curbing along West Grenshaw Street has been broken to allow vehicle access from the street to this property. Tract B on the other hand is improved with a five-story brick commercial building having large entrances thereto both on West Roosevelt Road and on South Morgan Street

and with two 17-foot loading docks and one 7-foot loading elevator located on the north-south alley immediately across from Tract A. The loading docks are actually interior passageways wide enough for a truck to enter and which extend from the alley some 25 feet into the building.

Tract B was acquired by Associated Mercantile Company, an Illinois corporation, on November 3, 1926, and was immediately improved with the five-story building. On March 1, 1927, the corporation acquired lot 133, being the easterly half of Tract A, and on February 2, 1928, purchased the remainder of the tract. Thereafter, Tract B was used for commercial purposes until June 16, 1932, upon which date an involuntary petition in bankruptcy was filed against the corporation. In the schedule filed in the proceedings, the bankrupt correctly listed Tract B among its assets but for unknown reasons did not include Tract A, and as a result thereof no administration was ever had upon the latter parcel. While the bankruptcy action was pending, suit was commenced in the circuit court of Cook County by a mortgagee to foreclose a mortgage which had been given by Associated Mercantile Company solely upon Tract B and, pursuant thereto, Tract B was subsequently sold by the master-in-chancery to Frank C. Rathje, who acquired his deed on June 7, 1935. Meanwhile, however, Associated Mercantile Company had been involuntarily dissolved on May 11, 1933, Tract B had been sold by the trustee in bankruptcy to a Charles Levy some three months later, and on March 27, 1934, the bankruptcy proceedings were closed and the trustee fully discharged. By mesne conveyances, record title to Tract B was subsequently vested in Lake Shore National Bank, a present defendant.

Despite the aforesaid events, record title to Tract A remained in the name of Associated Mercantile Company until February 13, 1940, upon which date an action was commenced in the name of the People of the State of Illinois to foreclose a general tax lien existing against said

property for unpaid taxes from 1929 to 1938, both years inclusive. Associated Mercantile Company, "formerly a corporation of Illinois," was made a defendant to these proceedings, and the shareholders of said corporation, their spouses, and all other persons having or claiming to have an interest in these premises were joined therein as "Unknown Owners," all of said parties being duly served by publication. Requisite affidavits as to unknown owners and for publication were filed showing that diligent inquiry had been made to determine the name of said individuals, and by a decree of foreclosure subsequently entered therein it was found that all of said parties were subject to the jurisdiction of the court. Pursuant to such decree, Tract A was sold on May 9, 1940, to Joseph H. Platt, and at a supplemental proceeding held in the circuit court on May 19, 1942, it was found that diligent inquiry had been made to determine the identity of all persons having an interest in said property, that the term "Unknown Owners" included all shareholders of the dissolved corporation, their spouses, and "all persons living or dead whose names are unknown and who do or may claim some right, title or interest in, or lien upon the above described real estate or some part thereof." The decree further found that all requirements for a tax deed had been fully met and ordered the issuance of such a deed to Julius Copeland, the present plaintiff, as assignee of Joseph H. Platt.

Upon receiving his tax deed, plaintiff continued to pay taxes upon the vacant property until February 7, 1952, at which time he took open possession of the premises by erecting a large sign upon the wall of the house immediately adjacent to the west boundary line of Tract A, the sign stating, among other things, that plaintiff was the owner and that trespassers would be prosecuted. Thereafter, in June, 1952, plaintiff caused concrete piers to be erected within the property lines on the northern and eastern borders of lot 133, being the east half of Tract A,

so as to extend some two feet below and twenty-eight inches above the ground level and with a distance of approximately four feet between each pier. About seven months later a petition to reopen the Associated Mercantile Company bankruptcy case and to schedule and administer Tract A as a bankruptcy asset, was filed by a former creditor thereof, with the knowledge and consent of Melvin Zarbin and other defendants herein. Without notice to plaintiff, a new trustee in bankruptcy was appointed and the property was sold by him to Robert Pressman on November 12, 1953, "subject to unpaid mortgages, unpaid general and special taxes." Pressman in turn conveyed his interest to defendant Melvin Zarbin on December 2, 1953, and just five days later Zarbin employed five workmen to go upon Tract A and remove the concrete piers, but before the demolition was completed, plaintiff appeared upon the scene and caused the operation to cease. Prior to instituting the present action, plaintiff conveyed an undivided ⅓ interest in Tract A to defendant Harvey H. Copeland.

Melvin Zarbin now contends that his title, derived through the reopened bankruptcy proceedings, is superior to that acquired by plaintiff in the tax foreclosure action, and the other defendants, except Harvey H. Copeland, claim that Tract A was used as a means of access to the loading docks on Tract B, both at the time of their common ownership by the corporation and subsequent thereto, with the result that they acquired an easement by either prescription or implication over the subject parcel.

At the hearing before the master, Morris Chapman, manager of the commercial building located on Tract B, testified that since he assumed his managerial duties in 1937, he occasionally drove his automobile to the loading docks, and in making the turn from West Grenshaw Street into the north-south alley, his tires "would slip off onto Lot 133." Another defense witness, Louis Paskind, pointed out that the commercial structure was built on Tract B in

1926 and that Associated Mercantile Company paved lot 133 "on account of trucks backing into * * * the loading platform." As he explained it, trucks pulling into the alley from West Grenshaw Street frequently scraped the side of the residence situated at the alley entrance, and to avoid this, many drivers swerved onto lot 133 at this point. Louis Sacks, while employed by Associated Mercantile Company during 1927 and 1928, observed that the trucks would usually back into the alley from West Grenshaw Street and then pull ahead with their front wheels on lot 133 so as to back straight into the loading docks. Since 1934 to the present date he also noted that the same practice was observed. Jacob Zarobinsky, another defense witness, worked for Pritikin Furniture Company 1932 to 1937 as a driver. He stated that his truck was approximately 22 feet in length and in order to back this truck into the loading docks he found it necessary to at least partially drive upon Tract A, but since the truck was not as long as the dock itself, it was completely within the building when finally parked. He did say that a truck could drive in from West Grenshaw Street without encroaching upon Tract A if it unloaded in the alley, and upon inquiry by the master, he admitted he had never tried to back into the loading docks without first pulling on the plaintiff's property. Abe Pritikin, a driver for Pritikin Furniture Company from 1930 to 1946, testified that he would normally swerve onto Tract A when turning into the alley from West Grenshaw to avoid a post which was situated near this corner and that he customarily drove onto Tract A before backing into the loading docks. Another driver, Frank Curry, said he had been employed by the furniture company since 1935 and that he had done likewise. He admitted, however, that after the piers were installed around Tract A in 1952, the pole at the alley entrance was removed and trucks entered through the alley and unloaded in front of the docks without entering upon

the plaintiff's parcel. According to Frank Stejskal, the building engineer for Tract B since 1941, trucks were prevented from using Tract A not only at the time the concrete piers were constructed in 1952 but also when other obstructions barred their entrance for a month or two in 1946. Finally defendant Melvin Zarbin testified that the occupants of the residence situated at the entrance to said alley have constructed a "bunker" at this spot which sticks out into the alley about a foot and that they also keep garbage cans in the alley, which further restricts the alley width by another two to three feet. He first became acquainted with the property in 1937, cited several recent usages of Tract A by furniture trucks, and stated that backing into the loading docks from Tract A was "the most convenient way."

In support of his claim of title, Melvin Zarbin contends that the tax foreclosure proceeding was invalid because Tract A was at all times between 1932 and 1953 *in custodia legis* in the bankruptcy court and because the owners of said tract were never made parties to the foreclosure action. It is of course elementary that a trustee in bankruptcy takes only such title as the bankrupt had and subject to the same liens, claims, and encumbrances as are valid against his creditors. (*Hewit* v. *Berlin Machine Works,* 194 U.S. 296, 48 L. ed. 986.) Thus any title which vested in the trustee by the bankruptcy proceedings in 1932 did so subject to the lien for unpaid taxes beginning in 1929. Although Zarbin has cited *Dayton* v. *Stanard,* 241 U.S. 588, 60 L. ed. 1190, and *Bowman* v. *Towery,* 207 Okla. 6, 248 P.2d 1030, to the effect that tax liens may not be foreclosed while the property is *in custodia legis,* a reading of these cases discloses that there the parcels were in the course of active administration under the bankruptcy law when foreclosure was attempted; consequently they have no application where, as here, the Federal matter was closed years before the foreclosure took place. The mere

fact that a bankruptcy proceeding may be subject to reopening does not in and of itself prevent the State from collecting delinquent taxes by whatever means it has at its disposal. (*People* v. *Hess,* 7 Ill.2d 192.) Therefore, the basic question in this regard is not whether the property remained *in custodia legis* prior to the reopening of of the bankruptcy proceeding but, rather, whether all necessary parties were joined in the tax foreclosure action so as to bar this collateral attack.

Section 216 of the Revenue Act (Ill. Rev. Stat. 1939, chap. 120, par. 697) then provided that upon foreclosure of a tax lien, notice thereof must have been given to interested parties "as is now provided by law," and this was interpreted to mean notice in accordance with section 263 of the act. (*Clark* v. *Zaleski,* 253 Ill. 63; *People* v. *Banks,* 272 Ill. 502.) The latter section (Ill. Rev. Stat. 1939, chap. 120, par. 744,) required that notice be given to persons in actual possession of the property, to the party in whose name the same was last taxed, and to those having some interest therein. It went on to state that where such parties could not be found in the county, they might be served by publication, and that if the identity of certain interested persons was unknown they should be joined as unknown owners. In the present case no one was then in possession of the property, and Associated Mercantile Company, having been last assessed therefor, was made a party to the suit. Thus, it remains to be decided whether all other interested persons were duly served as unknown owners. It is not contended that the publication or the affidavits upon which it was based were improper, nor that plaintiff failed to make diligent inquiry to determine the names of all persons concerned. Rather, defendants arbitrarily insist that since neither the trustee in bankruptcy nor unpaid creditors were specifically named as parties, they are not bound by the foreclosure decree. We must point out that in 1940, when such action was commenced,

no bankruptcy trustee was in existence and the Federal court had long since relinquished jurisdiction of the case. Thus the re-establishing of any interest which creditors may have had in the former action was contingent upon the reopening of the matter by the bankruptcy court, and until this was done they most certainly had no interest in the land itself. Although legal title was vested in the trustee during the bankruptcy proceedings, such interest was not personal to that individual but devolved upon him only as an officer of the court, and when he was discharged from that position title did not remain suspended but reverted rather to the bankrupt and its legal representative, subject of course to being revested in a new trustee by the reopening of the bankruptcy proceedings. (*Burton* v. *Perry*, 146 Ill. 71; *Normal State Bank* v. *Killian*, 318 Ill. App. 637, 48 N.E.2d 212; *Stipe* v. *Jefferson*, 192 Minn. 504, 257 N.W. 99; *Hanson* v. *First National Bank*, 61 Tex. Civ. App. 18, 128 S.W. 1147; *Watson* v. *Motley*, 201 Ala. 25, 75 So. 147; *Smith* v. *Arkansas Fuel Oil Co.* 219 La. 982, 54 So.2d 421.) Since the bankrupt was dissolved at the time the trustee was discharged, title necessarily reverted not to the corporation itself but to its shareholders in proportion to their respective holdings. (*People* v. *Hess*, 7 Ill.2d 192.) Such individuals and their spouses were properly made parties to these proceedings as unknown owners, and, in addition thereto, all other persons "who do or may claim" an interest in this property were also served. In view of the circumstances of this case, it cannot be said that the notice provisions of our Revenue Act were not complied with or that all parties in interest were not bound by the foreclosure decree.

As has been stated many times by this court, our whole system of judicial sales is based upon the public's willingness to accept titles thereby created, and for that reason, we strive to protect the purchaser whenever possible. Only

in an exceptional circumstance will the tax title be defeated. (*Village of Dolton* v. *First National Bank of Blue Island,* 12 Ill.2d 435.) It is our opinion that in the present case, plaintiff acquired through tax foreclosure action a new and independent title, free and clear from all previous titles and claims of every kind and character, including those arising from the prior bankruptcy proceedings, (*Clark* v. *Zaleski,* 253 Ill. 63; *Jader* v. *Costello,* 405 Ill. 181,) and such is in accord with our recent pronouncement in *People* v. *Hess,* 7 Ill.2d 192. There a corporation had gone bankrupt, did not schedule certain real estate, and was later dissolved. The property was never administered by the bankruptcy court but was later sold under a tax foreclosure decree. In upholding redemption by a shareholder of the defunct corporation, we pointed out that, in the absence of such redemption, the creditor's rights in the property would be inferior to those acquired through the foreclosure action. Since no redemption was had in the instant case, the same reasoning would apply.

As to the alleged easement, it is clear that such claim stems from the purported use of Tract A in conjunction with the furniture enterprises located on Tract B; yet, except for the business conducted by Associated Mercantile Company, the common owner, prior to bankruptcy, and the leasing of a portion of Tract B by Pritikin Furniture Co., a corporation, from 1933 to its dissolution four years later, the record speaks only of commercial activities commenced by defendants in 1937. It is of course elementary that one cannot acquire an easement over his own property (*Bihss* v. *Sabolis,* 322 Ill. 350), and when we consider that no privity was shown to exist between Pritikin Furniture Company, a corporation, and the present defendants, and that all use of Tract A was obstructed by the construction of concrete piers thereon in June, 1952, it is evident that there was not the uninterrupted, exclusive,

continuous and hostile usage of Tract A for a period of twenty years which is necessary to acquire an easement by prescription. *Leesch* v. *Krause,* 393 Ill. 124.

Neither have the defendants established an easement by implication. Such an easement arises, if at all, at the time unity of ownership is severed and results from a long continued use of one property for the benefit of another by the common owner which is highly convenient to the dominant estate and which is so well known and plainly apparent to the eye that it must be presumed the owner intended such servitude to be permanent. (*Cosmopolitan National Bank* v. *Chicago Title and Trust Co.* 7 Ill.2d 471; *Kling* v. *Ghilarducci,* 3 Ill.2d 454; *Sheehan* v. *Sagona,* 13 Ill.2d 341; *Carter* v. *Michel,* 403 Ill. 610; *Traylor* v. *Parkinson,* 355 Ill. 476.) Since Associated Mercantile Company was the common owner, it was incumbent upon defendants to show such use existed between the time Tract B was improved and the date of severance. To do this, they furnished the testimony of Louis Paskind, Louis Sacks, and Abe Pritikin. The former said that in 1926 he observed trucks entering upon Tract A to get to the loading docks; Sacks noted similar usage in 1927 and 1928, and Pritikin said such also occurred in 1930. One said it was necessary to drive on Tract A to avoid scraping the residence at the alley entrance, another remembered that in executing this maneuver "the front wheels would be on this Lot 133," and the third witness insisted that it was necessary to swing about 2½ feet onto Tract A at the alley entrance in order to miss a pole at that location. Although it goes without saying that an easement over the land of another must have a particular definite line (28 C.J.S., Easements, sec. 79), not one person described the course of the alleged easement with sufficient particularity to physically locate it upon the property itself. The granting of such an elusive servitude would be sheer folly since no court would be in a position to enforce the decree.

Also the facts that Associated Mercantile Company did not own Tract A when the loading docks were constructed and such installations continued to be used when piers prevented access to the alleged servient estate further tend to detract from defendants' claim. The common owner was adjudged a bankrupt on August 4, 1932, and the building on Tract B remained vacant until shortly before the property was sold by the trustee in August, 1933. The record indicates that during this time there was no obvious and apparent use of Tract A which would lead one to believe that a permanent servitude was intended, and both the master in chancery and superior court so found. We have many times held under such circumstances that the decree of the lower court will be disturbed upon review only if found to be against the manifest weight of the evidence. (*Tess v. Radley*, 412 Ill. 405; *Finley v. Felter*, 403 Ill. 372.) After carefully considering the evidence in this regard, it is our opinion that defendants have failed to produce the clear and convincing proof necessary to establish such a servitude.

For the reasons stated the decree of the superior court of Cook County is affirmed.

*Decree affirmed.*