SAVOY, Judge.
Plaintiff instituted a boundary action which was resisted by defendant. At the request of plaintiff, the lower court ordered a survey to establish the boundaries between the parties’ respective lands, appointed a surveyor for that purpose, and subsequently homologated the survey proceedings, granting judgment, on the rule to homologate the survey, in favor of plaintiff in accordance therewith. From this judgment, defendant has appealed.
The land in dispute is a tract of approximately four acres which lies generally south of a public road, and which extends souther *844 ly to the bank of the Red River, in Avoyel-les Parish, Louisiana. For purposes of clarity we have attached to this opinion a copy of a portion of the survey filed in the record and referred to by the witnesses in their testimony. The property in dispute *845 is that part of F, G, K, J which lies south of the road, i. e., between the road and Red River. The issue for decision is whether that tract is owned by plaintiff or by defendant.

*844

*845 Both plaintiff and defendant own land out of an original tract of approximately forty acres, in which the disputed tract also lies, each party claiming title through a common author in title. The public road referred to above bisects the forty-acre tract in a generally east west direction, so that part of the forty-acre tract is north of the road, with the remainder of it south of the road.
Plaintiff owns another tract of 8.5 acres, out of the original forty acres, lying just north of defendant’s property. The boundary between plaintiff’s northernmost tract and defendant’s land was also initially at issue in the lower court. There was but a small discrepancy involved, and the parties now concede that they have no real argument there. Since they have acquiesced to that extent in the survey made, and since the judgment of the lower court includes it within its provisions, we feel it unnecessary to deal with it further in this opinion.
The real issue, then, is the question of the four-acre tract south of the public road and extending to the Red River. For a clear understanding of the dispute, it is necessary to comment on the prior chain of title back to the common author, as follows:
The forty-acre tract, in its entirety, was originally owned by T. J. McKay. He later sold it to J. C. Cappel. Cappel subsequently resold it to McKay in 1935, but during his ownership, Cappel had sold off two parcels: (1) 17 acres to Clifton Wilson in 1925 and (2) 1/z acre to Clifton Wilson in 1931. These two parcels were excepted in the sale from Cappel back to McKay in 1935.
In 1937 McKay sold a two-acre tract fronting on (that is, bounded south by) the public road, to Stonewall J. Reed. This is shown on the attached plat as E, F, G, H, but extends to the road.
In 1941 Reed sold that two-acre tract to Clifton Wilson, again, by description, fronting on the public road. The deed also referred to the tract as being the same one purchased by Reed from McKay in 1937.
Finally, as concerns the two-acre tract, Wilson, in 1945, sold two tracts of land to plaintiff. One was the 17-acre tract, not here involved, which abuts the property in dispute on the east (see plat). The other was the “two-acre” tract from which the present dispute arises. However, instead of being described as two acres fronting on the road, the description by which Wilson and Reed had acquired it, the property was described as two acres “more or less” being bounded on the south by the Red River. The deed went on to say, however, that this was “the same tract of land acquired by James C. Wilson from Stonewall J. Reed * *
In 1965, defendant purchased the then remaining portions of the original forty-acre tract from the heirs of T. J. McKay, under which he claims title to the disputed tract, and under which he would have title unless plaintiff has acquired it by 10 years prescription.
As previously noted, Wilson purchased a one-half-acre tract from J. C. Cappel in 1931. The subsequent history of that tract is not clear from the record. It was not expressly described in the deed from Wilson to Downs in 1945. The testimony shows it was located on the extreme southern end of the four acres in dispute, next to the river, and has probably been taken by the river. Hence, we cannot consider it as being a part of the four acres in dispute.
Although Wilson owned only two acres and the description in the deed to Downs covered about six acres, we will assume *846 that the deed from Wilson to plaintiff is one translative of title to the disputed four-acre tract. The lower court so held, and concluded that by virtue of plaintiff’s actual occupancy and possession of the two acres north of the public road, where he maintains his home, he had constructive possession of the lower, or disputed tract, under the principle of law that possession of a part is possession of the whole. LSA-C.C. Article 3437.
After carefully reviewing the record, we have concluded that whatever constructive or civil possession plaintiff had of the four acres in dispute must yield (1) to the corporeal possession which the record clearly shows defendant and his authors in title have had of that part of the four acres lying south of the fence M, N on the plat and (2) to the constructive possession which they have had of the part north of the fence M, N.
The attributes of possession for ten-year acquisitive prescription are set forth in LSA-C.C. Article 3487 as follows:
“To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
"1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporeal possession.
“2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”
Further, it has been held in our jurisprudence that the nature of corporeal possession sufficient to form the basis of prescription of ten years depends on the character of the land; what constitutes possession in any case is a question of fact, and each case depends upon its own fact; the corporeal possession necessary to support the plea of prescription must include such external signs of possession as to indicate clearly that the possessor holds control and dominion over the property. Jacobs v. Southern Advance Bag & Paper Company, 228 La. 462, 82 So.2d 765, and cases cited therein.
A comment in 12 Tulane Law Review 608 sets forth a rather good summary of acts of possession which have been held sufficient or insufficient in our jurisprudence to satisfy the Civil Code, (which may thereafter be followed by mere civil possession in the ten year prescriptive title). As examples, the comment cites jurisprudence to the effect that neither the grazing of cattle nor the occasional cutting of timber would constitute sufficient possession; nor the digging of a canal plus the felling of trees; the gathering of pecans in opposition to one who had fenced and cultivated the land; the planting of a small garden on parts of the land and the grazing of a cow or two thereon, etc. On the other hand, acts held to have been sufficient have included the enclosing of land along with such acts as the grazing of cattle; the cultivation of a crop thereon; the use of the land for turpentine operations; the surveying of the land and marking of boundaries when combined with such acts as the placing of a rent sign thereupon, etc.
As regards situations where there is a conflict between constructive possession and corporeal possession, or between two constructive possessions, the principles of law are well established by our jurisprudence. The rule applicable here was sue- *847 cinctly stated in Ernest Realty Company v. Hunter Company, 189 La. 379, 179 So. 460 (1938) as follows:
“It is a well settled and established principle of law that where the legal and rightful owner of a tract of land has actual possession of a part thereof, he is in legal and constructive possession of the whole, except such portion thereof that may be in the actual possession and occupancy, by inclosure or otherwise, of a party claiming either by title under article 3478 or thirty years’ .adverse possession, article 3499. The reason for the rule is that both cannot have constructive possession. Moore Planting Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22, and cases therein cited with approval.”
Later cases following this rule are Smith v. Arkansas Fuel Oil Company, 219 La. 982, 54 So.2d 421; Jowers v. Coats, La.App., 76 So.2d 99; and Buras v. United Gas Pipeline Company, La.App., 127 So.2d 271.
With these principles of law in mind, let us examine the facts of the present case. Several of the Tom McKay heirs, men who are now 50 or 60 years of age, and who were born and raised on the property now owned by defendant, testified that when the plaintiff Downs purchased from Cliff Wilson in 1945, there was already an existing fence along the line P, M, N, J on the plat. They said this fence enclosed their land on the river bank, which was used for pasture and at one time had actually been used to raise crops of corn and peas; and that beginning long before 1945 Tom McKay and his children and lessees and heirs and finally the defendant, after his purchase in 1965, have used the property for such purposes, up to the fence M, N, J, down to the present time.
Tom McKay leased the land enclosed within this fence to various persons at -various times. He leased it to Bentley McNeal (which will be discussed in more detail hereinafter) from 1953 to about 1958; to Travus Wiley in 1961; and to one of his sons, Emmerick McKay, during the years 1962-1963.
In an attempt by plaintiff to show that he had some corporeal possession of the four acres in dispute, following his purchase from Cliff Wilson in 1945, Downs introduced the testimony of Bentley Mc-Neal. Bentley McNeal is the brother of the defendant, Veron McNeal, but he admitted quite freely that they had a dispute about some property and hadn’t spoken to each other for several years. Bentley McNeal acknowledged that in 1953 he had leased from Tom McKay, (defendant’s ancestor in title) all of McKay’s property lying south of the levee. Despite the testimony of four, or five other witnesses to the contrary, Bentley McNeal testified that he built the fence P, M, N, J in 1953. His explanation for building the fence along the line M, N, J, instead of running it straight to the river along the line M, K, is that the plaintiff Downs “permitted” him to so construct the fence.
The plaintiff Downs testified to the same effect, i. e., that he “permitted” Bentley to build the fence M, N, J in 1953. This is apparently an attempt by plaintiff to show that whatever possession Bentley Mc-Neal had of the property during the years 1953 to 1958 was actually for the plaintiff Downs.
There is some testimony in the record that at some time after his purchase from Cliff Wilson in 1945, Downs built the fence L, M over the levee and across the ramp to tie in with the McKay fence P, M, N, J. The year during which this fence, L, M, was built is not shown, but it must have been after the river bridge was rebuilt and the ferry at the foot of the ramp ceased operation. Furthermore, the evidence does not show that Downs used the property north and east of the fence, L, M, N, in a manner sufficient to constitute corporeal possession. There is some testimony that he pastured cattle in this small area, but the years during which this was done, or *848 the number of cattle, or the fences used, is not clearly shown.
We note that the trial judge did not find Downs exercised any corporeal possession whatever of any portion of the four acres in dispute. As stated above, the trial judge based this decision entirely on Downs’ constructive possession of the four acres, by virtue of corporeal possession of the two acres north of the road. We think the trial judge was absolutely correct in finding that Downs did not prove corporeal possession of any portion of the four acres in dispute. But additionally, we think the record clearly shows that defendant and his authors in title, the McKays, have had corporeal possession of that part of the four acres south of the fence M, N, and constructive possession of the part north of that fence, since before Downs purchased in 1945.
Under the principles of law set out above, defendant’s corporeal possession of part, and constructive possession of the remainder, of the four acres in dispute, takes precedence over whatever constructive possession plaintiff had. Plaintiff therefore did not have the possession requisite for ten years prescription.
For the reasons assigned, the judgment appealed is affirmed insofar as it fixes the boundary line between the respective parties along the line X-Y (the line of the %Yz acres not disputed on appeal, and not shown on the attached plat) but is reversed and set aside insofar as it recognizes the line G-L-M-K as the boundary line between the parties.
It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Veron McNeal, and against the plaintiff, Alfred Downs, recognizing the disputed boundary between the parties as being the following: beginning at point E on the attached plat, thence S 13055' W to point I-I, thence along the line H-GL-K to the north boundary of the public road (near point G), thence along the north boundary of the road in a northerly direction to the line E-F-I-J, thence in a southerly direction along the line F-I-J to the bank of the Red River.
It is further ordered, adjudged and decreed that all costs in the lower court are to be paid one-half by the plaintiff and one-half by the defendant. All costs of this appeal are assessed against the plaintiff, Alfred Alf Downs.
Affirmed in part and reversed in part.